Scott Nolan KING, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C1–96–2337.

Supreme Court of Minnesota.

May 8, 1997.

Linda M. Freyer, Asst. Henn. County Atty., Minneapolis, for Respondent.

Scott Nolan King, pro se.

## OPINION

BLATZ, Justice.

Appellant Scott Nolan King was convicted of first-degree murder on December 18, 1992 and his conviction was affirmed by this court on March 11, 1994. During his trial, the state submitted expert evidence that DNA in King's blood matched DNA found in semen samples taken from the victim's body. The district court did not hold a *Frye* hearing and King's counsel did not object to the admission of DNA evidence. On July 31, 1996, King filed a petition for postconviction relief contending that the district court erred in not holding a *Frye* hearing, that King's trial counsel was ineffective because he did not request a *Frye* hearing, and that his appellate counsel was ineffective because she did not appeal the *Frye* issue. The postconviction

court denied King's petition in all respects, without holding an evidentiary hearing. We affirm.

Scott Nolan King was convicted of first-degree murder (while attempting to commit first-degree criminal sexual conduct) under Minn.Stat. § 609.185(2) (1996). His conviction was affirmed by this court. *State v. King,* 513 N.W.2d 245 (Minn.1994).

On or about February 6, 1992, Gwendolyn Lewis was stabbed to death in her Minneapolis apartment. The medical examiner found semen in Lewis's vagina, in her anus, and on her buttocks. Based upon the evidence in his possession, the medical examiner concluded that the evidence was "highly suggestive" that sexual activity occurred after death.

The police received informant information that King had admitted to killing Lewis, causing them to focus on King as a suspect. Based upon the informant information, the police obtained a search warrant authorizing them to remove King's blood for comparison with semen samples found at the murder scene. Police officers executed the warrant on April 2 by bringing King to Hennepin County Medical Center (HCMC) for removal of a blood sample. En route to HCMC, King told police officers that he knew about DNA typing and was happy to give a blood sample because he did not have sex with Lewis.

When subsequent analysis of King's blood sample showed that the DNA in his blood matched the DNA in semen found in and on Lewis, police officers arrested King on April 22. When a police officer informed King he was under arrest for Lewis's murder, King stated, "I knew it. Just because I f* * *ed her doesn't mean I killed her, does it?"

After arriving at the police station, police officers read King his *Miranda* rights and interrogated King. King changed his story often during the 3– to 5–hour interrogation. After initially denying that he had sex with Lewis, he admitted that Lewis had consensual sex with him in exchange for crack cocaine. He admitted having vaginal sex with Lewis but denied having anal sex or killing her. During the interrogation, King attempted to implicate several other people in

Lewis's murder. The next day, on April 23, King was read his *Miranda* rights again and was interrogated a second time. At this interrogation, King was confronted with evidence indicating that one of the people he had implicated in Lewis's murder was not in the apartment building on the day of the murder. During this interrogation, King stated, "I done killed this woman," "I guess I did," and "It ain't nobody else." King said he did not know why he killed her, but that he did not rape her and did not remember having sex with her after she was dead.

King was indicted on one count of first-degree murder on June 4, 1992. King was represented by counsel at his jury trial. Before trial, the state moved to admit *Spreigl* evidence and King's trial counsel filed a memorandum in opposition to the state's motion. King's counsel also filed his own motions and memoranda, including motions to suppress King's statements to the police and to suppress DNA evidence on the basis that blood samples taken from King were obtained in violation of his Fourth Amendment rights. The district court ruled in favor of the state on all of these issues.

DNA evidence was admitted at trial after the state laid a foundation for the evidence. A forensic scientist from the Bureau of Criminal Apprehension (BCA) testified that the DNA profile he obtained from samples of semen found on Lewis's buttocks and in her vagina "match[ed]" the DNA profile from King's blood. The forensic scientist also testified that the probability of a random match was less than 1 in 1 billion.

At trial, the defense's theory of the case was that King had consensual sex with Lewis on February 6, then left the apartment building. King's trial counsel argued that Lewis was seen and heard in the apartment building after King left the building. He contended that King's confession was involuntary because King confessed after a lengthy interrogation and did not give sufficient details of the crime to corroborate his confession. King's counsel argued that when King told two acquaintances that he killed Lewis, he was being sarcastic. He also argued that many of the state's witnesses were crack

addicts who had memory problems, so their evidence was suspect.

The jury found King guilty of first-degree murder. The district court sentenced him to life imprisonment.

King was represented by different counsel on the direct appeal from his conviction. His appellate counsel argued that the results of King's blood test should have been suppressed because the affidavit supporting the search warrant contained a misrepresentation, that King's statements to the police should have been suppressed as fruits of an unlawful search, and that the trial court erred in admitting the *Spreigl* evidence. King filed a pro se brief on appeal, arguing that his conviction should be reversed on six grounds, including ineffective assistance of counsel. King based his ineffective assistance of counsel claim on King's trial counsel's failure to present testimony from three witnesses, including the doctor who performed Lewis's autopsy. King's pro se brief did not mention the admission of DNA evidence or the lack of a *Frye* hearing.

On direct appeal, this court held that the district court did not err in concluding that the search warrant was valid, that any error in admitting King's statement to police when the search warrant was executed was harmless, and that the *Spreigl* evidence was properly admitted. *King,* 513 N.W.2d at 248–49. In conclusion, this court noted that it had considered King's pro se supplemental brief and had determined that King "received a fair trial and was properly found guilty of first-degree murder." *Id.* at 249.

King filed a petition for postconviction relief, seeking vacation of his sentence or a new trial. King asserted that the trial court erred in admitting DNA evidence without first conducting a *Frye* hearing. He also asserted that he was denied effective assistance of counsel because his trial counsel did not request a *Frye* hearing and because his appellate counsel did not appeal the *Frye* issue. King requested an evidentiary hearing on his petition. King's petition for postconviction relief was denied in all respects by the same district court judge as had presided over the trial and sentencing. In denying King's petition, the postconviction court

found that King did not raise any new or novel claims, that the grounds for relief he presented were known at the time of his appeal, that he had received effective representation at trial and a fair trial, and that he had failed to meet his burden of proving that his appellate counsel's representation fell below an objective standard of reasonableness.

## I.

King contends that the district court erred in failing to hold an evidentiary hearing on his petition for postconviction relief.

"A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case." *State v. Rainer,* 502 N.W.2d 784, 787 (Minn. 1993) (citing Minn.Stat. § 590.04, subd. 3 (1996)). This court reviews postconviction proceedings to determine whether the evidence is sufficient to sustain the postconviction court's findings and will not overturn the postconviction court's findings absent an abuse of discretion. *Hodgson v. State,* 540 N.W.2d 515, 517 (Minn.1995).

A postconviction court is not required to hold an evidentiary hearing unless there are material facts in dispute which must be resolved in order to determine the postconviction claim on the merits. *Id.* In this case, the postconviction court properly denied King an evidentiary hearing because he failed to cite any disputed facts.

## II.

King contends that the district court erred in admitting DNA evidence. However, King's trial counsel did not object to the admission of the DNA evidence and did not request a *Frye* hearing. In fact, King's trial counsel stipulated to the chain of custody of the DNA evidence and King's blood sample. In putting this stipulation on the record, King's trial counsel stated that he had spoken with King about the issue before stipulating to it. The only objection King's trial counsel made to the DNA evidence was when he objected to testimony from the BCA's forensic scientist as to the National Academy

of Science's findings regarding the reliability of DNA testing. The district court overruled his objection.

■ "Generally, failure to object to evidence at trial constitutes waiver of those issues on appeal." *Van Buren v. State,* 556 N.W.2d 548, 551 (Minn.1996). There is an exception to the general rule. When defense counsel fails to object at trial, a defendant may still obtain appellate review if the error was a "plain error affecting substantial rights" and if "the error had the effect of denying the defendant a fair trial." *Id.* In light of the defense's trial theory that King and Lewis had consensual sex before she was murdered, we conclude that the failure of King's counsel to object to the admission of DNA evidence does not meet the plain error standard. Thus, in accordance with the general rule, we conclude that King may not now challenge the credibility of DNA evidence when he failed to move to suppress the evidence at trial and stipulated to the chain of custody of the evidence.

### III.

King also contends that he was denied effective assistance of counsel because his trial counsel failed to object to the admission of DNA evidence.

■ When a direct appeal has been taken, all matters raised in the direct appeal, as well as all claims known but not raised, shall not be considered upon a subsequent petition for postconviction relief. *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). This rule generally precludes claims of ineffective assistance of trial counsel, if known at the time of the direct appeal. *Black v. State,* 560 N.W.2d 83, 85 (Minn. 1997).

■ In this case, King had a direct appeal and submitted a pro se supplemental brief. In his supplemental brief, King argued that he had been denied effective assistance of trial counsel, but for different reasons than those he argues in his postconviction proceedings. On direct appeal, King argued that his trial counsel had been ineffective because he failed to call certain witnesses. In affirming King's conviction, this court not-ed that it had considered King's brief and held that King had received a fair trial. *King,* 513 N.W.2d at 249. King's ineffective assistance of trial counsel claim, having been raised and decided in his direct appeal, is precluded in a subsequent postconviction proceeding. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741.

■ Even if King's ineffective assistance of trial counsel claim had not been waived, we would have concluded that it had no merit. In determining whether a petitioner had effective assistance of counsel, this court applies the standard set by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Scruggs v. State,* 484 N.W.2d 21, 25 (Minn.1992). Under the two-part *Strickland* test, the petitioner must demonstrate: (1) that the counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for the counsel's errors, the outcome of the proceedings would have been different. *Scruggs,* 484 N.W.2d at 25 (citing *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064-65, 2068). A petitioner claiming ineffective assistance of counsel has the burden of proving his claim. *See State v. Heinkel,* 322 N.W.2d 322, 326 (Minn.1982).

■ In determining whether the counsel's representation fell below the standard, we must first decide if the representation was "reasonable in light of all the circumstances." *Dent v. State,* 441 N.W.2d 497, 500 (Minn.1989) (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). There is a strong presumption that a counsel's performance falls within the range of reasonableness. *State v. Jones,* 392 N.W.2d 224, 236 (Minn. 1986). In reviewing a counsel's performance at trial, this court recognizes that counsel must have discretion to determine trial strategy and must have the flexibility to represent a client to the fullest extent possible. *Id.*

King was represented at trial by an experienced and capable criminal defense attorney. The record in this case demonstrates that King's trial counsel engaged in substantial pretrial preparation. Although King's trial counsel moved to have a variety of inculpato-

ry evidence suppressed, the district court denied all of his motions.

■ Once the district court ruled that King's statements were admissible, including his multiple admissions that he had consensual sex with Lewis in her apartment on the day she probably died, King's trial counsel's choice of defense strategies was severely limited. The defense's theory at trial was that King had consensual sex with Lewis in the morning or early afternoon of February 6 and then left Lewis's apartment building. In support of this theory, King's trial counsel elicited testimony in an attempt to show that Lewis was alive later in the evening. Through cross-examination of the apartment's tenants and an employee of the public housing authority, King's counsel also attempted to show that it would have been possible for someone else to have entered the building. In addition, he impeached several of the state's key witnesses by questioning them about their use of crack cocaine and prior convictions. On cross-examination, King's counsel elicited an admission from the medical examiner that there was no way to determine what time of day the sexual activity occurred. In an attempt to corroborate King's version of events, King's counsel elicited testimony from the BCA's forensic scientist that while the evidence suggested that King had vaginal sex with Lewis, the BCA could not reach a conclusion with respect to the anal swabs. Because King's trial counsel knew that King's statements in which he admitted that he had sex with Lewis on the day of the murder were going to be admitted at trial, and because King's trial counsel's theory of the case was that King had consensual sex with Lewis but did not kill her, King's trial counsel could have made a tactical decision not to dispute that the semen found in and on Lewis was King's. King has not cited any evidence to show that his trial counsel's representation was unreasonable.

■ Even if there were errors in a counsel's performance, this court does not find ineffective assistance of counsel unless the defendant was prejudiced as a result of the errors. *Jones,* 392 N.W.2d at 236–37. On review, this court considers whether, under the totality of the circumstances, the result of the proceedings would have been different if counsel had not erred. *See id.* at 237.

King contends that the result in this case would have been different if King's trial counsel had requested a *Frye* hearing. However, King has not submitted any evidence challenging the methods used for testing DNA at the BCA. Based upon the record before this court, there is no reason to believe the district court would have suppressed the DNA evidence if a *Frye* hearing had been held. In addition, even if we were to assume that the DNA evidence would have been suppressed if King's trial counsel had insisted on a *Frye* hearing, a plethora of other incriminating evidence was introduced at trial including: (1) a police officer's testimony that King confessed to the murder; (2) testimony from two of King's acquaintances that King had admitted to killing Lewis; (3) King's admission to police and his acquaintances that he had sex with Lewis around the time she was believed to have died; (4) testimony from the chief medical examiner that the evidence showed that Lewis had her pants on when some of the stab wounds were inflicted and that the semen was deposited after her pants had been removed; (5) testimony from an assistant medical examiner that, based upon information available to him, it was "highly suggestive" that Lewis was already dead when the sexual contact occurred; and (6) testimony to establish a *Spreigl* incident in which King had brutally assaulted another female acquaintance, threatened to kill her, and dragged her down some stairs. Thus there is no reason to believe that the outcome of the proceedings would have been different if King's trial counsel had requested a *Frye* hearing.

### IV.

■ King also contends that his appellate counsel was ineffective because she failed to raise the *Frye* issue in the direct appeal. King was represented by an experienced and competent appellate attorney. King's appellate counsel challenged the search warrant for King's blood, the statements King made to the police, and the *Spreigl* evidence. Appellate counsel does not have a duty to include all possible claims and

is entitled to argue the most meritorious ones. *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn.1990); *Dent*, 441 N.W.2d at 500. Presumably, King's appellate counsel determined that the *Frye* issue had no merit because it was waived at trial when King's trial counsel failed to request a *Frye* hearing and failed to object to the DNA testimony.[1] His appellate counsel's representation was reasonable under the circumstances and King has not produced any evidence demonstrating that there is a reasonable probability that the outcome of the proceedings would have been different if his appellate counsel had appealed the *Frye* issue.

We conclude that the postconviction court properly denied an evidentiary hearing on King's petition for postconviction relief and conclude that the evidence is sufficient to sustain the postconviction court's findings. We hold that the postconviction court properly denied King's petition for postconviction relief.

Affirmed.

---

1. It is noteworthy that King filed a supplemental pro se brief at the time of the direct appeal. Although King raised a number of issues, including ineffective assistance of trial counsel, he did not mention the admission of DNA evidence or the lack of a *Frye* hearing in his brief. This court has noted that when a defendant in a criminal case wishes to raise issues not addressed by his appellate counsel, he should do so in his pro se supplemental brief. *Black*, 560 N.W.2d at 86.