**Roel ALANIS, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C2–97–1014.

Supreme Court of Minnesota.

Aug. 6, 1998.

---

Kyle D. White, St. Paul, Sergio Andrede, Inver Grove Heights, for appellant.

H.H.H., III, State Atty. Gen., St. Paul, Wayne Swanson, Polk Co. Atty., Scott Buhler, Asst. Co. Atty., Crookston, for respondent.

Amicus curiae Immigrant Law Center of MN Karen Ellingson, Executive Dir., Maria Baldini–Potermin, Staff Atty., St. Paul.

Amicus curiae John M. Stuart, MN State Public Defender, Lawrence Hammerling, Deputy State Pub. Def., Cathryn Middlebrook, Asst. State Pub. Def., Minneapolis.

## OPINION

PAGE, Justice.

In this case we review an unpublished decision of the court of appeals affirming the postconviction court's order denying appellant Roel Alanis's petition for postconviction

relief in which he sought to withdraw his guilty plea. Alanis, who has lived in the United States for 32 years, is a 50–year–old resident alien from Mexico with a sixth-grade education and limited ability to read and write in English. On October 21, 1996, Alanis pled guilty to three felony offenses, including a second-degree controlled substance crime in violation of Minn.Stat. § 152.022, subds. 1(1) and 3(a) (1996); unlawfully obtaining Aid For Dependent Children (AFDC) in violation of Minn.Stat. §§ 256.98, subd. 1, 609.52, subd. 3(3)(a), and 609.05, subd. 1 (1996); and unlawfully obtaining food stamps in violation of Minn.Stat. §§ 393.07, subd. 10(c)(1), 609.52, subd. 3(4) and 609.05, subd. 1 (1996). Alanis also pled guilty to two misdemeanor offenses for possession of a small amount of marijuana and driving after his license had been revoked. On November 25, 1996, Alanis was sentenced to 54 months in prison for the controlled substance offense, 13 months for the AFDC offense, and 12 months for the food stamp offense, all sentences to run concurrently.

On April 9, 1997, Alanis filed a petition for postconviction relief in which he claimed that: (1) he was not advised that by pleading guilty he would be subject to deportation; (2) he had ineffective assistance of counsel; (3) the state promised him he would be immediately eligible for the Challenge Incarceration Program; (4) the court interpreter miscommunicated and/or mistranslated the court proceedings; (5) the plea petition used was not multilingual; and (6) he was innocent. The postconviction court denied the petition without an evidentiary hearing. In its memorandum of law supporting the denial of relief, the postconviction court noted that Minnesota courts have not addressed the issue of whether a criminal defendant must be informed in advance of a guilty plea that deportation is a possible consequence of a guilty plea and relied on federal case law [1] to conclude that it is not necessary to provide such information. Further, the postconviction court concluded that defense counsel's failure to so inform Alanis of the possibility of deportation did not constitute ineffective assistance. The postconviction court also found that Alanis failed to show that the state made any promises to him regarding the Challenge Incarceration Program which were not met; that Alanis's claims regarding the plea petition and his claims of innocence were without merit; and that no manifest injustice had occurred. Finally, the postconviction court declined to hold an evidentiary hearing on Alanis's court interpreter claims because Alanis "failed to point to even one specific instance of miscommunication."

The court of appeals affirmed the postconviction court. The court of appeals found that Alanis's guilty plea was accurate, voluntary, and intelligent and therefore withdrawal of the plea was not necessary to correct a manifest injustice. The court of appeals also found that Alanis's claim of innocence was without merit, that his petition to withdraw his guilty plea was untimely, and that his claim that he did not understand the plea due to a language barrier was without support in the record. The court of appeals concluded that Alanis did not have a claim for ineffective assistance of counsel because his defense counsel was not required to advise Alanis of the collateral consequence of deportation. And finally, the court of appeals concluded that an evidentiary hearing was not warranted in this case because Alanis's "allegations lacked any factual or evidentiary basis."

On appeal to this court, Alanis argues that he should be allowed to withdraw his guilty plea to correct a manifest injustice, his defense attorney's failure to inform him that he would be deported if he pled guilty constitutes ineffective assistance of counsel, and that the lower courts erred in denying him an evidentiary hearing. Alanis, along with amici State Public Defender and Immigrant Law Center of Minnesota, also ask this court to exercise its supervisory powers to require that district courts, before accepting guilty pleas, warn alien defendants that the plea may subject them to deportation. We conclude that withdrawal of his guilty plea is not necessary to correct a manifest injustice because Alanis's guilty plea was accurate, voluntary, and intelligent; that defense coun-

---

1. The court cited *United States v. Romero–Vilca*, 850 F.2d 177, 179 (3rd Cir.1988) and *Downs-* *Morgan v. United States*, 765 F.2d 1534, 1538 (11th Cir.1985).

sel's failure to inform him that deportation might be a consequence of his guilty plea did not constitute ineffective assistance of counsel; and that the postconviction court did not err when it denied him an evidentiary hearing. Therefore, we affirm.

The relevant facts are as follows. On December 28, 1995, a Polk County Sheriff's Department deputy was informed that a 16-year-old girl, J.G., was using cocaine. The deputy contacted J.G., and she told him that she had been buying cocaine in 1/2- and 1-gram quantities from a man who lived in an apartment in East Grand Forks. J.G. agreed to accompany the deputy and a Crookston police officer to East Grand Forks in order to identify the apartment. J.G. identified Alanis's apartment and indicated that she had been buying the cocaine from a man at the apartment named Roel. A search warrant for the apartment was obtained and during its execution, Maria Aguirre, who lived with Alanis and is the mother of his infant child, was taken into custody. While in custody, Aguirre informed the sheriff's deputy that Alanis used marijuana and cocaine and that she believed he was selling cocaine. She also admitted that their household was receiving welfare benefits but had not reported Alanis's income from cocaine sales. In addition to taking Aguirre into custody, the officers seized various items related to illegal drug activity from the apartment, including a small quantity of marijuana, trace amounts of cocaine, a scale, a container of inositol powder—an agent used to dilute powdered cocaine, almost $8,000 in cash, and televisions, VCRs, and stereo equipment the police believed had been exchanged for drugs.

On September 26, 1996, a nine-count complaint was filed against Alanis in Polk County, charging him with six controlled substance offenses, one child endangerment offense for selling drugs with a child present in the home, and two welfare fraud offenses. Through counsel, Alanis entered plea negotiations and reached an agreement with the Polk County Attorney's Office. The agreement called for Alanis to be sentenced to a maximum of 54 months in prison so that he would be eligible for entry

into the Department of Corrections' Challenge Incarceration Program—a 6-month boot camp program. Alanis's guilty plea was taken at a plea hearing on October 21. At the hearing, Alanis was provided an interpreter. Being eligible to enter the boot camp program was a key factor in Alanis's decision to plead guilty, and repeatedly throughout the plea hearing, Alanis asked whether he would qualify for the program. Before accepting the plea, the district court explained to Alanis that the plea agreement contemplated that he would be sent to prison for a term not to exceed 54 months as called for by the sentencing guidelines. The district court also questioned him to verify that he understood what he was pleading guilty to and that he was waiving his right to trial. Alanis indicated that he understood. In addition, the district court asked him if he made any claim that he was innocent, to which Alanis replied that he did not. During the hearing, it was noted that Alanis had been speaking with Aguirre in Spanish. As a result, he was specifically asked by the prosecutor if he understood the plea agreement himself, and he replied that he did.

During the sentencing hearing, the interpreter informed the sentencing court that Alanis was under the impression that he would be going directly from the courtroom to the boot camp. The sentencing court replied that he would be turned over to the Commissioner of Corrections who would process him into the boot camp program.

Because of the combination of concurrent felony and gross misdemeanor sentences he received, the Commissioner of Corrections did not process Alanis directly into the Challenge Incarceration Program. However, after correspondence between the Department of Corrections, the district court, and Alanis, he was accepted into the program and was scheduled to begin in February 1997. But, before he would be admitted to the program, the Immigration and Naturalization Service (INS) lodged a detainer against him, which, under the program's rules, made him ineligible for the program. He also learned that the INS was seeking to deport him because of the drug offense conviction. Alanis wrote

to the district court judge who accepted his plea asking for his help. In response, the judge wrote to Alanis stating that he was unable to help because the INS was a completely separate agency.

A criminal defendant has the burden of establishing facts warranting the reopening of his case.[2] Criminal defendants do not have "an absolute right" to withdraw a guilty plea, but "may withdraw a guilty plea after sentencing 'upon a timely motion and proof to the satisfaction of the court that withdrawal of the plea is necessary to correct a manifest injustice.'"[3] In determining claims of ineffective assistance of counsel, we apply the standard set by the United States Supreme Court in *Strickland v. Washington*.[4]

Under the *Strickland* test, the petitioner must demonstrate:

(1) that the counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for the counsel's errors, the outcome of the proceedings would have been different.[5]

Alanis bears the burden of satisfying both prongs of the *Strickland* test.[6] Finally, a postconviction court must hold an evidentiary hearing where there are disputed material facts that must be resolved in order to get to the merits of the postconviction claim.[7] The petitioner also bears the burden of establishing those disputed facts.[8] If there is sufficient evidence to sustain the postconviction court's findings, we will not overturn those findings absent an abuse of discretion.[9]

A manifest injustice occurs when a guilty plea is not accurate, voluntary, and intelligent.[10] The accuracy requirement protects the defendant from pleading guilty to a more serious offense than he or she could be properly convicted of at trial.[11] The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements; and the intelligent requirement insures that the defendant understands the charges, his or her rights under the law, and the consequences of pleading guilty.[12] Here, the postconviction court did not abuse its discretion in finding that Alanis's plea was accurate, voluntary and intelligent, and did not err in concluding, based upon those findings, that no manifest injustice warranting withdrawal of his plea occurred.

Alanis argues that his plea was not accurate because the factual basis for his guilty plea to selling cocaine and welfare fraud lacked any reference to persons, dates, times, or places, and because the court and Alanis never heard what state's evidence existed. We find this argument without merit. While we need not detail them here, our review of the transcript of Alanis's plea hearing indicates ample factual support for each of his guilty pleas in the record before the district court at the time the plea was made.

Alanis also argues that his plea was not accurate because the interpreter provided at the hearing was not qualified as an expert under Minn. R. Evid. 604, and because a multilingual plea petition was not used. This argument suffers from two fatal flaws. First, while making the argument, Alanis has not directed this court's attention to even one misinterpretation or mistranslation by the interpreter. He has also failed to indicate or explain how any misinterpretation

---

2. *King v. State*, 562 N.W.2d 791, 794 (Minn. 1997).

3. *Perkins v. State*, 559 N.W.2d 678, 685 (Minn. 1997) (citations omitted).

4. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See King*, 562 N.W.2d at 795.

5. *King*, 562 N.W.2d at 795.

6. *Id.*

7. *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995).

8. *See King*, 562 N.W.2d at 794. *See also* Minn. Stat. § 590.04, subd. 3 (1996).

9. *King*, 562 N.W.2d at 794.

10. *Perkins*, 559 N.W.2d at 688.

11. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989).

12. *Id.*

or mistranslation which may have occurred or how the absence of a multilingual plea petition resulted in prejudice to him. Second, from the record before us, it is evident that the district court went to great lengths to make sure that Alanis did, in fact, fully understand the allegations against him and the terms of the plea agreement. Thus, we conclude that Alanis's guilty plea was accurate.

■ In addition to challenging the accuracy of his plea, Alanis argues that his plea was not voluntary because the prosecutor promised him that he would qualify for the 6–month boot camp program. The record here indicates that the district court and the prosecutor clearly explained to Alanis, and he indicated that he understood, that he was being sentenced to 54 months in prison. That 54–month sentence made him eligible for the boot camp program. Although the concurrent sentences for the AFDC and the food stamp convictions initially caused a problem with respect to entry into the program, that problem was resolved relatively quickly after Alanis called it to the attention of the district court judge who accepted his plea. Once the problem was resolved, Alanis was accepted into and scheduled to begin the boot camp program. It was only after the INS placed a detainer on him that he was excluded from the program. Thus, Alanis received the sentence agreed to and contemplated by his plea agreement and that sentence made him eligible for the boot camp program. The fact that the INS detainer, which the district court had no control over, intervened to prevent him from ultimately entering the program, does not change that fact. We conclude that Alanis's guilty plea was voluntary.

Alanis contends that his guilty plea was not intelligent because he "understood that he would be sentenced to 6 months in the boot camp program" and he was not warned of the possible immigration consequences of pleading guilty. As discussed above, the record from the plea hearing belies Alanis's contention that he "understood that he would be sentenced to 6 months in the boot camp program." At the time he entered the plea, Alanis knew and understood that he was being sentenced to 54 months in prison.

■ Alanis's claim that he was not warned of the possible immigration consequences of pleading guilty is true. He was not warned of those consequences. Knowledge of that fact, however, does not necessarily help in determining whether his plea was intelligent. The question we must answer is whether such a warning was required. While we have said that for a guilty plea to be intelligent the defendant must be aware of the consequences of pleading guilty, it is the direct consequences of the guilty plea to which we refer.[13] In *Kim v. State*, we said that ignorance of a collateral consequence does not entitle a criminal defendant to withdraw a guilty plea.[14] The state argues that a criminal defendant is only entitled to be informed of direct consequences of his or her guilty plea and that direct consequences are those which flow definitely, immediately, and automatically from the guilty plea, namely, the maximum sentence to be imposed and the amount of any fine. The state further argues that any consequence that results from actions taken by other government agencies such as the INS are collateral. Finally, citing to numerous federal cases, the state argues that deportation is a collateral consequence.

We find the state's argument persuasive. It makes sense that direct consequences are those which flow definitely, immediately, and automatically from the guilty plea—the maximum sentence and any fine to be imposed. Further, it makes sense that deportation is not a direct consequence of the guilty plea[15] because deportation is neither definite, immediate, nor automatic. Before a resident alien such as Alanis can be deported, the INS must exercise its discretion to commence deportation proceedings and, prior to

---

13. See *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

14. 434 N.W.2d 263, 266–67 (Minn.1989).

15. See *United States v. Banda*, 1 F.3d 354, 356 (5th Cir.1993); *Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir.1992).

deportation, there are various administrative procedures which must be followed.

We are satisfied from the record that Alanis, before pleading guilty, knew and understood the charges against him and his rights under the law as well as the direct consequences of making the plea, that being the maximum sentence and the amount of any fine to be imposed. Thus, we conclude that the postconviction court's decision that withdrawal of Alanis's guilty plea was not necessary to correct a manifest injustice was not error.

Alanis next argues that his attorney's failure to inform him that his guilty plea might subject him to deportation constitutes ineffective assistance of counsel. This argument fails. It fails because as a collateral consequence of the guilty plea, his attorney was under no obligation to advise him of the deportation possibility and, therefore, the failure to so inform him could not have fallen below an objective standard of reasonableness as required by *Strickland.*[16]

We now turn to Alanis's final substantive argument—that the postconviction court erred when it denied a hearing on his petition. We conclude that this argument is also without merit. A postconviction court must hold an evidentiary hearing when there are disputed material facts which must be resolved to get to the merits of the postconviction claims.[17] The burden of establishing those disputed facts is on the petitioner, in this case Alanis.[18] Alanis claims that "there are material facts in dispute that have not been resolved"; however, he has failed to specifically identify what those disputed facts are, and a thorough review of the record by this court has not identified any such disputed facts. Absent any disputed material facts, we conclude that the postconviction court did not abuse its discretion in denying Alanis an evidentiary hearing.

Alanis and amici State Public Defender and Immigrant Law Center of Minnesota ask this court to exercise its supervisory powers to require that resident alien criminal defendants be advised by the district court that their guilty plea may result in deportation. We decline to do so. The court's advisory Criminal Rules Committee is currently considering this question, and we believe the committee is a more appropriate forum for answering it.

Affirmed.

---

**16.** *See Banda,* 1 F.3d at 356; *Varela,* 976 F.2d at 1358.

**17.** *Hodgson,* 540 N.W.2d at 517.

**18.** *See Brown v. State,* 449 N.W.2d 180, 183 (Minn.1989).