Scott Nolan KING, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C2–01–2251.

Supreme Court of Minnesota.

Aug. 1, 2002.

Scott Nolan King, Stillwater, for Appellant.

Mike Hatch, Minnesota Attorney General, St Paul, Amy Klobuchar, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

■ Appellant Scott Nolan King appeals from the denial of his second petition for postconviction relief, stemming from his conviction for first-degree murder while attempting to commit first-degree criminal sexual conduct for the 1992 killing of Gwendolyn Lewis. We affirmed his conviction on direct appeal, *State v. King*, 513 N.W.2d 245, 249 (Minn.1994) (*King I* ), and affirmed the denial of his first petition for postconviction relief, *King v. State*, 562 N.W.2d 791, 797 (Minn.1997) (*King II* ). In his second petition for postconviction relief appellant argues inter alia that (1) DNA testing procedures used in his case were unreliable and that the DNA evidence should have been suppressed; (2) the statute under which he was convicted, Minn.Stat. § 609.185(2) (1990), has been rendered unconstitutional since his conviction; (3) the district court erroneously admitted into evidence his statements to police without first specifying whether it had viewed a videotape of the police interrogation; and (4) he was deprived of the effective assistance of trial and appellate counsel. The postconviction court denied the request for an evidentiary hearing and for relief, ruling that appellant's claims were procedurally barred because each claim had been raised or should have been raised on direct appeal or in his first postconviction proceeding. Appellant requests that we address his claims on the merits and reverse the postconviction court's judgment denying relief.[1] We hold that the

---

1. Appellant's motion to review two issues not included in his appellate brief comes nearly two months after this case appeared on the en banc calendar. In his motion he asserts that he forgot to include the issues in his brief. This reason is insufficient to compel our re-

postconviction court did not abuse its discretion by denying an evidentiary hearing and by denying relief. Therefore, we affirm.

On or about February 6, 1992, Gwendolyn Lewis was stabbed to death in her Minneapolis apartment. The medical examiner found semen in Lewis's vagina, in her anus, and on her buttocks, and testified that the evidence was "highly suggestive" that sexual activity occurred after death. Later the police received information that appellant had admitted to killing Lewis and obtained a search warrant to remove appellant's blood for comparison with semen samples from the crime scene. Appellant told police officers that he knew about DNA analysis and was happy to give a blood sample because he did not have sex with Lewis. When analysis showed appellant's DNA matched the DNA profile of the semen from the crime scene, appellant was arrested. When informed of the test results and that he was under arrest for Lewis's murder, appellant stated, "I knew it. Just because I f——ed her doesn't mean I killed her, does it?"

During police interrogation appellant provided several versions of what occurred on the night of February 6, 1992. He initially denied having sex with Lewis, but later admitted that Lewis had consensual vaginal sex with him in exchange for crack cocaine; however he denied having anal sex with Lewis or killing her. During two days of interrogation appellant told police that he had discovered the body after the murder, and that Lewis had been killed by an unidentified Cuban or by one of her neighbors. Later in the interrogation appellant said, "I don't know the reason I

killed her. So high." He also stated, "I done killed this woman," "I guess I did," and "It ain't nobody else." In his formal statement, he admitted that it was "possible" that he killed Gwendolyn Lewis "[b]ecause * * * there was no one there but her and me." Appellant never said that he knew for sure that he had killed Lewis.

Before trial appellant moved to suppress his statements to the police, claiming the statements were involuntary because of his vulnerable state of mind during interrogation. Appellant also moved to suppress DNA evidence on the basis that blood samples taken from him were obtained in violation of his Fourth Amendment rights. The district court denied these motions and admitted the statements, as well as DNA evidence. At trial the state's expert laid a foundation for the DNA evidence, establishing that the laboratory conducts "restriction fragment length polymorphism analysis" where the scientist analyzes a series of six "autorads" from each DNA sample. The scientist testified that the DNA profile he obtained from three samples of semen found on Lewis's buttocks and in her vagina "match[ed]" the DNA profile from appellant's blood. The expert also testified that in order to establish the probability of a "random match" where two individuals share the same DNA profile, the sample was compared to a database of nearly 800 individuals made up of Caucasians, Native Americans and African Americans. The expert testified that in this case, the probability of a random match between appellant's DNA and each of the racial databases was less than 1 in 1 billion.

view and thus the motion is denied. To the extent that in the new issues appellant argues that the district court erroneously instructed the jury on lesser-included offenses, we note that appellant's trial counsel objected to the inclusion of lesser-included offenses in the

jury instructions and thus the issues were known to appellant at the time of his direct appeal. Since appellant did not raise these issues in his direct appeal, further review of these issues is barred. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976).

At trial, appellant's theory of the case was that he had consensual sex with Lewis on February 6, then left her apartment. Appellant contended that his confession was involuntary because he confessed after a lengthy interrogation and did not give sufficient details of the crime to corroborate his confession. Key evidence against appellant at trial included (1) testimony that appellant supplied crack cocaine to the residents of the building, including Lewis, (2) testimony of multiple witnesses that placed appellant in the apartment across the hall from Lewis's apartment on the day Lewis's death was believed to have occurred; (3) testimony that several days after the murder appellant admitted killing Lewis; (4) appellant's inconsistent statements to police; (5) expert testimony that the DNA in defendant's blood matched the DNA in the semen found in and on Lewis's body and that the possibility of a random match was 1 in 1 billion, and (6) *Spreigl* evidence that in December 1987 appellant had brutally assaulted another female acquaintance while threatening to kill her, and had dragged her partially clad body down a flight of stairs, leaving a trail of blood as he did so. The jury found appellant guilty of first-degree murder, and he was sentenced to life imprisonment.

On direct appeal, appellant's counsel—who was not appellant's trial counsel—argued that the results of appellant's blood test should have been suppressed because the affidavit supporting the search warrant contained a misrepresentation,[2] that appellant's statements to the police should have been suppressed as fruits of an unlawful search and because appellant was not advised of his *Miranda* rights before making certain statements, and that the district court erred in admitting *Spreigl* evidence. Appellant filed a pro se brief on appeal, arguing that his conviction should be reversed on six grounds, including ineffective assistance of counsel for failing to call three witnesses, including the doctor who performed Lewis's autopsy, arguing that the doctor could establish that her body showed no signs of trauma associated with sexual intercourse. In *King I* we held that the search warrant was valid, any error in admitting appellant's statement made when the search warrant was executed was harmless and that the *Spreigl* evidence was properly admitted. *See King I*, 513 N.W.2d at 248–49. We also noted that we had considered appellant's pro se brief and—without written analysis of each argument—concluded that appellant received a fair trial and was properly convicted. *See id.* at 249.

In 1996 appellant filed his first petition for postconviction relief, seeking vacation of his sentence or a new trial. Appellant asserted that (1) the district court erred in admitting DNA evidence without first conducting a *Frye* hearing and (2) he was denied effective assistance of counsel because his trial counsel did not request a *Frye* hearing and because his appellate counsel did not appeal the *Frye* issue. Ap-

---

2. The misrepresentation in the affidavit chiefly concerned appellant's alleged confession of the murder to acquaintances. Richard Davis, the father of Lewis's son, told a police investigator that he had heard appellant, while high on crack, admit to another man that appellant killed Lewis. The police tried but failed to contact witnesses that could corroborate Davis's story. The officer did not know Davis but was assured by a colleague that Davis had provided reliable information in the past.

Based in part on this information police applied for and obtained the search warrant for appellant's blood. After the warrant was executed the officer learned that in fact Lewis had not heard the admission. However two others heard the admission and one testified to it. We held in *King I* that the warrant was not invalid because the police did not deliberately or recklessly misrepresent any facts in the warrant affidavit. *King I*, 513 N.W.2d at 248.

pellant requested an evidentiary hearing on his petition. Appellant's petition for an evidentiary hearing and for postconviction relief was denied in all respects by the same district court judge that presided over the trial and sentencing. In denying appellant's petition, the postconviction court concluded that appellant did not raise any novel claims, that the grounds for relief he presented were known at the time of his appeal, that he had received effective representation at trial and a fair trial, and that he had failed to meet his burden of proving that his appellate counsel's representation fell below an objective standard of reasonableness. We affirmed the postconviction court's denial of relief. *King II*, 562 N.W.2d at 797.[3]

Next appellant filed the petition for postconviction relief at issue here. In this second petition in state court appellant made the following claims: (1) DNA testing procedures used in his case were unre-

liable and the DNA evidence should have been suppressed; (2) the statute under which he had been convicted, Minn.Stat. § 609.185(2), should be declared unconstitutional; (3) the district court erroneously admitted into evidence his statement to police without first specifying whether it had viewed a videotape of the police interrogation; (4) he was deprived of the effective assistance of trial and appellate counsel; (5) the evidence presented at trial was insufficient to support the jury verdict that the crime occurred in Hennepin County. Appellant also requested an evidentiary hearing on these claims and requested the appointment of counsel.

■ On November 8, 2001, the postconviction court denied appellant's second petition concluding that: (1) appellant "failed to affirmatively prove" that his trial or appellate counsel was ineffective under the *Strickland v. Washington* test[4] and "[a]fter viewing the totality of the trial pro-

---

3. In 1997 appellant filed an application for a writ of habeas corpus in United States District Court. A federal magistrate concluded that none of the claims set forth in appellant's application for a writ of habeas corpus—that (1) the state postconviction court violated appellant's Fourteenth Amendment right to due process by not conducting an evidentiary hearing on his postconviction claims, (2) this court had violated his Fourteenth Amendment right to due process by denying his postconviction claims without first directing the postconviction court to conduct an evidentiary hearing, (3) the district court had violated his Fourteenth Amendment right to due process by admitting DNA evidence without first holding a pretrial hearing on the admissibility of the DNA evidence, (4) his conviction had been obtained in violation of his Fifth Amendment right against self-incrimination because the district court had failed to "acknowledge" the videotape recording of the police interrogation before admitting into evidence his statement to the police, (5) his conviction had been obtained in violation of his Fourth Amendment right against unreasonable searches and seizures because the search warrant for a sample of his blood contained misrepresenta-

tions, and (6) his conviction had been obtained in violation of the Sixth Amendment right to counsel because he had been denied effective assistance of trial and appellate counsel—had merit and recommended dismissal of appellant's application. According to the state, the federal district court adopted the magistrate's report in its entirety and dismissed the application with prejudice, and that subsequently the Court of Appeals for the Eighth Circuit denied appellant's application for a certificate of appealability. The United States Supreme Court denied appellant's petition for a writ of certiorari. *King v. Crist*, 528 U.S. 858, 120 S.Ct. 144, 145 L.Ed.2d 122 (1999) (mem.).

4. To prevail on a claim of ineffective assistance of counsel, an appellant must prove that (1) his counsel's representation "fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

ceedings, the presentation of evidence, including the DNA evidence and the jury instructions, [appellant] received effective trial representation and a fair trial"; (2) appellant's claims regarding his statements to police, DNA evidence, erroneous and prejudicial jury instructions, ineffective assistance of counsel, and lack of jurisdiction were barred as they were raised or should have been raised in the prior direct appeal; and (3) appellant failed to raise a novel claim, in that the legal bases for these claims were available and known at the time of appellant's direct appeal. The postconviction court also denied appellant's motion for an evidentiary hearing and his motion for appointment of counsel. In this appeal appellant argues the postconviction court abused its discretion by denying his petition with respect to four of the five grounds for relief argued in his postconviction petition.[5]

■ We review a postconviction proceeding to determine only whether sufficient evidence exists to support the postconviction court's findings and will not disturb the court's decision absent an abuse of discretion. *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993). A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts that would warrant reopening a case. *Id.*

■ A petition for postconviction relief is a collateral attack on a conviction that enjoys a presumption of regularity. *Hummel v. State*, 617 N.W.2d 561, 563 (Minn.2000). A postconviction court must hold a hearing on the petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat.

§ 590.04, subd. 1 (2000). Conversely, an evidentiary hearing is necessary " 'whenever material facts are in dispute that * * * must be resolved in order to determine the issues raised on the merits.' " *State v. Rhodes*, 627 N.W.2d 74, 86 (Minn.2001) (quoting *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995)). "Thus, appellant must allege facts that would, if proven by a fair preponderance of the evidence, entitle him to relief." *Rhodes*, 627 N.W.2d at 86. Any doubts as to whether to conduct an evidentiary hearing should be resolved in favor of the party requesting the hearing. *State ex rel. Roy v. Tahash*, 277 Minn. 238, 244, 152 N.W.2d 301, 305 (1967).

■ Once a defendant directly appeals a conviction, all matters raised in that appeal or known at the time of appeal will not be considered by a postconviction court in a subsequent petition for relief. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976); *see also* Minn.Stat. § 590.04, subd. 3 (2000). This rule applies if the defendant knew or should have known about the issue at the time of appeal. *Black v. State*, 560 N.W.2d 83, 85 (Minn.1997). Minnesota Statutes § 590.04, subd. 3, provides that a postconviction court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner. *Perry v. State*, 595 N.W.2d 197, 200 (Minn.1999).

■ An exception to the *Knaffla* rule provides that a claim that was known but not raised may be considered "only where a claim is so novel that it can be said that its legal basis was not reasonably available to counsel at the time the direct appeal was taken." *Case v. State*, 364 N.W.2d 797, 800 (Minn.1985). When there is a postconviction claim of "newly discov-

---

**5.** On appeal appellant did not raise the final claim in his postconviction petition: that the evidence presented at his trial was insufficient to support the jury verdict that the crime occurred in Hennepin County.

ered evidence" the petitioner must establish inter alia that the evidence was not known to him or counsel at the time of trial, that the failure to learn of it was not due to "lack of diligence," and that that the evidence is material and will probably produce a result more favorable to the petitioner. *Race v. State*, 417 N.W.2d 264, 266 (Minn.1987); *cf. Ferguson v. State*, 645 N.W.2d 437, 445 (Minn.2002) (concluding that in case where newly-discovered evidence is falsified trial testimony, the traditional requirement that a petitioner be taken by surprise at trial or not have known of the falsity of the testimony until after trial is not an absolute condition precedent for granting a new trial). Finally, even if appellant's claims are procedurally barred, this court may in the interest of justice address the claims on their merits. *See Boitnott v. State*, 631 N.W.2d 362, 369–70 (Minn.2001).

## I.

 We first consider whether the postconviction court abused its discretion by dismissing without an evidentiary hearing appellant's claim regarding the unreliability of DNA evidence used to convict him. On this issue the postconviction court concluded appellant's claims were barred under *Knaffla*. The court concluded that the DNA assertions failed to raise a novel claim, in that the legal bases for each claim was available and known at the time of appellant's direct appeal.

Appellant specifically alleged to the postconviction court that the testing methods used to match his DNA with samples taken from the body of Lewis were unreliable and therefore should have been suppressed. He characterized as "newly discovered testimonial evidence" his assertions that (1) there was a "mix-up" at the BCA regarding his DNA sample; (2) the BCA did not have a laboratory unit until 1993, one year after his trial; (3) he was never afforded a DNA expert at trial or afterward; (4) the statistical methods used by the BCA to match DNA created inaccurate results; (5) the database used to compare DNA samples and determine the accuracy of the match was neither representative of the general population nor sufficiently random; and (6) the technical process used by the BCA lab to match DNA samples was inaccurate. Appellant also moves this court to order the release of the DNA testing results to him and this court in order to facilitate a full analysis of his claims.[6] Appellant stated that his assertions would be supported by BCA forensic scientist Betty Jane Khreiss, who would testify about a mix-up at the DNA lab, and "Mary ——," who would testify that the BCA did not have a DNA lab until 1993. Appellant also alleged he would make an "offer of proof" regarding his other claims regarding the DNA evidence. Appellant has provided no evidence—in the form of affidavits or otherwise—to elaborate upon or substantiate his allegations regarding DNA.

According to the state's response to the postconviction petition, the lab mix-up occurred in 1996 (four years after appellant's trial) and is unrelated to appellant's case, and the other claims relating to DNA are "either simply untrue, misstatements of fact, irrelevant to the issue at hand, or

---

**6.** Appellant alleges that he made several motions to see the DNA results in his case and moves this court to order the Hennepin County Attorney's Office to release copies of the DNA results to this court and to appellant. No previous motions to release the results appear in the district court file. Given that appellant has offered no evidence of his previous motions, and that a motion for discovery is appropriately addressed to the district court, appellant's motion is denied.

most importantly, claims which could have been raised in his direct appeal." Here the state argues that appellant's DNA claims fail to satisfy our requirement that "newly discovered evidence" may only be used to grant a new trial if the evidence will probably produce either an acquittal at a retrial or a result more favorable to appellant. *See Race v. State*, 417 N.W.2d 264, 266 (Minn.1987). Finally the state argues that even without the DNA evidence, the cumulative weight of incriminating evidence introduced at trial—including appellant's confession to police and others that he killed Lewis and had sex with her around the time she died, testimony from the medical examiner that Lewis had her pants on when some of the stab wounds were inflicted and that semen was deposited after her pants had been removed and that it was "highly suggestive" that Lewis was already dead when the sexual contact occurred, and *Spreigl* evidence of a similar brutal assault—make it unlikely that a new trial would produce a different result.

We conclude that the rule we enunciated in *Knaffla* bars most, if not all, of appellant's DNA assertions because the bases for the claims had to have been known at the time of his direct appeal: namely, his assertion that the BCA did not have a DNA laboratory unit and his assertion that he was never afforded a DNA expert at trial or afterward. Moreover appellant raised a related claim in his first postconviction proceeding which was rejected by the postconviction court and this court.[7]

In light of the DNA claims that were or could have been raised on direct appeal and the claims appellant now asserts, we hold that the postconviction court did not abuse its discretion in denying him relief. *See Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. Even if we were to address appellant's DNA claims in the interest of justice, *see Boitnott*, 631 N.W.2d at 369–70, his DNA arguments fail on the merits as well. Appellant has failed to satisfy his burden in providing the court with evidence that would warrant reopening his case. Appellant has offered nothing but his own assertions in support of his theory that testing methodology has advanced so as to cast doubt on the strong 1 in 1 billion match that was testified to by a DNA expert at trial. To warrant an evidentiary hearing a petitioner's postconviction allegations must be "more than argumentative assertions without factual support." *See Beltowski v. State*, 289 Minn. 215, 217, 183 N.W.2d 563, 564 (1971). Based upon the allegations regarding DNA made by appellant in his petition for postconviction relief, its supporting memorandum, and his appellate brief, the postconviction court did not abuse its discretion in denying appellant relief without a hearing on the grounds relating to DNA evidence.[8]

---

7. In his first postconviction proceeding, appellant argued that the district court erred in admitting DNA evidence without first conducting a *Frye* hearing, and that he was denied effective assistance of counsel because his trial counsel did not request a *Frye* hearing and because his appellate counsel did not appeal the *Frye* issue. *King II*, 562 N.W.2d at 792. We held that appellant was barred from challenging the credibility of DNA evidence when he failed to move to suppress the evidence at trial and stipulated to the chain of custody of the evidence. *Id.* at 795.

8. We acknowledge however the difficulty a pro se indigent appellant would have in sufficiently mounting a case that would warrant the re-analysis of DNA evidence. Here the State Public Defender's office has declined to represent appellant in this matter, appellant's motion to have postconviction counsel appointed was denied by the postconviction court, and appellant—as an indigent prisoner—has no means to hire counsel or forensic experts. In the absence of a bare threshold of evidence warranting re-analysis of DNA evi-

## II.

▮▮ In appellant's second ground for postconviction relief he contends that the statute under which he was convicted, Minn.Stat. § 609.185(2), has been rendered unconstitutional by recent federal and state case law, and asserts that the postconviction court's refusal to declare the statute unconstitutional constitutes an abuse of discretion. Appellant argues that section 609.185(2)—which defines one type of first-degree murder as causing the death of a person while committing or attempting to commit criminal sexual conduct in the first or second degree· with force or violence—is unconstitutional because it does not require a finding of intent to cause death, and under caselaw decided after his trial, any criminal statute must include an element of intent. He alleges that *State v. Orsello*, 554 N.W.2d 70, 72 (Minn.1996) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that a murder statute include the element of intent to cause death. Appellant likewise argues that the jury instructions and verdict form in his case were faulty because they were based upon an unconstitutional statute.

The postconviction court held that appellant's claim regarding "erroneous and prejudicial jury instructions" would not be considered as it was barred under *Knaffla*. Apparently this ruling also encompasses appellant's argument regarding the murder statute.

In any event, *Orsello* and *Apprendi* are inapposite to appellant's constitutional argument. In *Apprendi* the Supreme Court held due process requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of prior conviction, must be submitted to jury and proved beyond a reasonable doubt. 466 U.S. at 490,· 104 S.Ct. 1949. Appellant's sentence—life in prison for first-degree murder—was not increased beyond the statutory maximum and therefore *Apprendi* does not apply. In *Orsello*, we held that specific intent, rather than general intent, was an element of stalking under Minn. Stat. § 609.749 (Supp.1993). *Orsello*, 554 N.W.2d at 77. After *Orsello* was issued, the legislature amended the stalking statute to provide that specific intent is not· an element.[9] We fail to see how these cases apply here.

▮▮ As for appellant's argument that section 609.185(2) is unconstitutional because it does not require a finding of intent to cause death, appellant correctly notes that due process requires that a criminal state of mind, or a criminal intent, is a necessary element of any crime having its origin in common law. *Orsello*, 554 N.W.2d at 72. However due process is not offended simply because section 609.185(2) does not require an intent to kill. Section 609.185(2) provides that whoever "causes the death of a human being while committing or attempting to commit criminal sexual conduct in the first or second degree with force or 'violence, either upon or affecting the person or another," is guilty of murder in the first degree. Minn.Stat. § 609.185(2). Because murder in·the first degree while committing criminal sexual conduct with force or violence is a "felony-murder" offense it does not require an intent to kill. On the contrary, felony-murder by definition involves an unintentional killing resulting from the commission of a felony that involves some special danger to human life. *State v. Mitjans*, 408 N.W.2d 824, 833 (Minn.1987). Here

---

dence, we are unable to examine the issue substantively or remand it for hearing.

**9.** *See* Act of May 6, 1997, ch. 96, §§ 7, 1997 Minn. Laws 694, 700.

the underlying felony was criminal sexual conduct in the first or second degree with force or violence, offenses that clearly require intentional acts. *See* Minn.Stat. §§ 609.342–.343 (1990). We conclude that appellant's argument that the felony-murder statute must contain an intent element is without merit and does not entitle appellant to relief.

## III.

■ In appellant's third ground for postconviction relief he alleged that his statements to police were involuntary and should have been suppressed at trial. Appellant asserts that he made the statements to the police only after he was physically assaulted by a police officer and that the assault was videotaped. Specifically appellant argued to the postconviction court that the district court was required to view the videotape of his interrogation before ruling on the voluntariness and admissibility of his statements.[10] Here he argues that the postconviction court abused its discretion by summarily dismissing appellant's claim regarding his statements to police.

The postconviction court ruled that appellant's claims regarding his statements to police were barred under *Knaffla* as they were raised or should have been raised on direct appeal or in his first postconviction petition. We agree. At trial appellant's defense counsel attempted to suppress the statements on several grounds including that, considering his vulnerable state of mind as a crack cocaine addict, appellant's will was overborne by interrogation. The court ruled that appellant was cognizant of his rights and the statements were admissible. On direct ap-

peal appellant argued through counsel that the statements should have been suppressed as fruits of an unlawful search, and argued pro se that his statements made after arrest should have been suppressed as they were involuntary and given after appellant "received physical force" and "was told that if he cooperated there would be no more physical force." This claim was considered and rejected summarily by this court in *King I*, 513 N.W.2d at 249 (stating "we have considered all of the claims made by defendant, including those in his pro se supplemental brief, and we conclude that he received a fair trial and was properly found guilty of first-degree murder."). Although in this postconviction proceeding appellant frames his argument around whether the district court viewed a videotape, his essential contention is that his statements were the result of force and coercion—an argument we rejected in appellant's direct appeal. Thus we conclude that under *Knaffla* the postconviction court acted within its discretion in denying this claim. *See also* Minn.Stat. § 590.04, subd. 3.

## IV.

■ In appellant's fourth ground for postconviction relief he alleged that he received ineffective assistance of trial and appellate counsel. The bases for this claim are his trial counsel's failure to challenge the grand jury indictment, failure to allege appellant had been beaten by police during interrogation, and reference to the trial as a "homicide case" during closing argument, and his appellate counsel's statement in the appellate brief that appellant was not physically abused or threatened by the police. The postconviction

10. We note that the record is silent as to whether the district court reviewed the tape. It does not appear that the tape was introduced into evidence at either the omnibus

hearing or the trial. Appellant and his counsel were aware of the videotape in that during the omnibus hearing a police officer testified that the interview was videotaped.

court ruled that his claim was procedurally barred by *Knaffla* and that, if the claim was not barred, appellant would not prevail on the merits. We agree.

Appellant raised ineffective assistance of counsel claims twice before. In his direct appeal appellant argued pro se that his trial counsel failed to call three material witnesses to testify. We concluded that we had considered all of the claims made by appellant, including those in his pro se supplemental brief, and concluded that he received a fair trial and was properly found guilty of first-degree murder. *King I*, 513 N.W.2d at 249. In his first postconviction petition, appellant argued that he was denied effective assistance of counsel because his trial counsel did not request a *Frye* hearing on DNA and because his appellate counsel did not appeal the *Frye* issue. We held that the trial counsel claim was barred because it was raised and decided in appellant's direct appeal. *King II*, 562 N.W.2d at 795. Further, we held that both ineffective assistance of counsel claims failed on their merits. *Id.* at 795–97.

Although appellant alleges slightly different attorney errors in this postconviction proceeding, he has had two prior opportunities to litigate an ineffective assistance claim as to his trial counsel and one prior opportunity to litigate an ineffective assistance claim as to his appellate counsel. Therefore his petition was properly rejected by the postconviction court. Furthermore appellant has alleged no facts that were not known to him at the time of his direct appeal or first postconviction proceeding. A claim that was known but not raised may be considered only where a claim is so novel that it can be said that its legal basis was not reasonably available to counsel at the time the appeal was taken. *Case*, 364 N.W.2d at 800. Appellant's ineffec-

tive assistance of trial and appellate counsel claims are not novel and their legal bases were reasonable available in the earlier proceedings. Thus appellant's ineffective assistance claims are procedurally barred.

Affirmed.