**STATE of Minnesota, Respondent,**

v.

**Earthia B. WILEY, Appellant.**

**No. CX–87–1633.**

Court of Appeals of Minnesota.

March 1, 1988.
Review Denied April 26, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Anne E. Peek, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and LANSING and MULALLY, JJ., with oral argument waived.

## OPINION

EDWARD D. MULALLY, Judge [*].

This is an appeal from a post-conviction order denying appellant Earthia Wiley's claim that he should be permitted to withdraw his guilty plea to attempted third degree criminal sexual conduct, Minn.Stat. § 609.344, subd. 1(c) and § 609.17 (1986). We affirm.

## FACTS

Appellant Earthia Wiley pleaded guilty to attempted third degree criminal sexual conduct on June 16, 1986, after having been charged with first degree criminal sexual conduct for an incident occurring on December 6, 1984. Wiley pleaded guilty following an omnibus hearing, at which his counsel made a motion to suppress statements made to police, a motion to admit evidence of prior sexual conduct of the complainant, and a motion to dismiss for alleged loss or destruction of exculpatory evidence by Wiley's former counsel.

On the record, Wiley's counsel informed the court a plea agreement had been reached, under which Wiley would submit an *Alford* plea, maintaining his innocence, and the state would amend the charge to attempted third degree criminal sexual conduct. The state and the defense agreed there was a sufficient factual basis for the plea based on the testimony heard at the Rasmussen hearing just concluded. The court stated it would allow an oral amendment to the complaint, to be followed by a written amended complaint, which was filed the following day. The court then recessed for Wiley and counsel to fill out the Rule 15 petition to plead guilty.

Upon return from the recess, Wiley was sworn and examined by his counsel as follows:

Q: Mr. Wiley, I am showing you a four-page document entitled Petition to Enter a Plea of Guilty, did you and I just go over this document here this afternoon in court?

A: Yes, sir.

Q: And you saw me fill in certain blanks on this document and cross out certain items on this document?

A: Yes, I did.

Q: And do you understand that this document contains the rights that you're giving up by entering a plea of guilty?

A: That's what you explained to me, yes.

Q: Okay. Is this your signature on the bottom of each of those four pages?

A: Yes, sir.

Q: And do you understand the rights that you are giving up?

A: Yes, I do.

The trial court asked Wiley the following question concerning his understanding of the plea:

Q: And you feel that you've had sufficient time to fully discuss this whole matter with Mr. Wernick so that he's explained to you the circumstances of changing your plea and the circumstances under which you are entering a plea of guilty to Attempted Criminal Sexual Conduct in the Third Degree?

A: Yes, over the last almost two years.

The court then questioned Wiley concerning his understanding of the possible sentences for each charge.

Wiley's counsel had made a motion for a competency examination under Minn.R. Crim.P. 20.01, based on the opinion of Wiley's personal physician that due to hyper-

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

tension, diabetes mellitus and required medications, Wiley was not competent to participate in trial proceedings. A psychological examination was conducted, to which counsel objected because it did not include an examination of Wiley's physical condition. However, counsel later obtained an order requiring such an examination.

Wiley testified at the post-conviction hearing he had not taken his insulin the day the guilty plea was offered. He also testified he had eaten no food and drunk four double shots of rum over the lunch hour. His counsel did testify he detected the odor of alcohol on Wiley's breath, but did not question his ability to comprehend the proceedings.

Wiley's counsel testified he was prepared to go to trial on June 16, 1986, but had discussed the possibility of a plea twice before with Wiley. He estimated he and Wiley discussed the Rule 15 petition for 20 to 30 minutes. Wiley's counsel testified to a number of meetings and phone calls with Wiley, supporting his conclusion Wiley understood his constitutional rights as well as any client he ever had.

Wiley testified his counsel was not prepared for trial, and that this lack of preparation forced him to consider pleading guilty. He testified counsel did not discuss with him the constitutional rights he was waiving by pleading guilty and spent only seven or eight minutes on the petition. He testified that although he was intoxicated it "didn't seem to make any difference" because he had so much on his mind.

The post-conviction court, also the presiding judge at the guilty plea hearing, found that Wiley gave no appearance of being intoxicated at the hearing, and that he had "communicated many times with his attorney regarding his case." The court found the waiver of Wiley's constitutional rights to have been knowing, voluntary and intelligent, and that Wiley was not denied the effective assistance of counsel. The court noted in an accompanying memorandum Wiley has "a knowledge of law and procedure extremely unusual in a person not 'learned in the law' by way of formal education."

Wiley had filed a notice to remove the judge from hearing the post-conviction petition, but this notice was denied on the grounds Wiley had earlier removed another judge from the trial proceedings, and had made no showing of actual prejudice.

### ISSUE

Did the post-conviction court err in denying the petition?

### ANALYSIS

Wiley contends he should have been allowed to withdraw his guilty plea because: 1) he was not adequately informed of his rights so as to make the waiver of those rights knowing and intelligent; 2) he was incompetent at the time of the plea; and 3) he was deprived of the effective assistance of counsel at the time the plea was taken.

Wiley argues the trial court's failure to ask the questions set out in Minn.R.Crim.P. 15.01 makes the record inadequate to show the waiver of constitutional rights was knowing, intelligent and voluntary. *See McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (defendant may withdraw his plea if the court fails to question him as required by Fed.R. Crim.P. 11).

It is generally held the *McCarthy* decision does not apply to state court criminal proceedings. *See Roddy v. Black,* 516 F.2d 1380 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *Neeley v. Duckworth,* 473 F.Supp. 288, 292 (D.Ind. 1979) (no due process requirement that the court follow the federal rule for questioning defendants). The Eighth Circuit Court of Appeals has noted that

> there is no constitutional requirement that the trial court employ a particular litany to validate a guilty plea.

*Rouse v. Foster,* 672 F.2d 649, 651 (8th Cir.1982). The Eighth Circuit also has indicated

> that having informed a defendant of his rights at an arraignment hearing does not require the procedure to be repeated at a guilty plea hearing if the record

shows the defendant understood the consequences of the plea when entered. *Stacey v. Solem,* 801 F.2d 1048, 1050 n. 2 (8th Cir.1986), *citing Clark v. Solem,* 693 F.2d 59, 60–61 (8th Cir.1982), *cert. denied,* 460 U.S. 1090, 103 S.Ct. 1787, 76 L.Ed.2d 355 (1983); *see also State v. Doughman,* 340 N.W.2d 348 (Minn.Ct.App.1983) (question is whether the record adequately establishes a voluntary and intelligent plea).

■ Minn.R.Crim.P. 15.01 lists the questions to be asked the defendant concerning his knowledge of his constitutional rights and his waiver of those rights by pleading guilty. Wiley was asked only one question concerning his waiver of constitutional rights, and that question, asked by his counsel, was very general, referring to the petition to plead guilty for the specific rights being waived. However, Wiley's counsel testified he discussed those rights in going through the Rule 15 petition with Wiley. Moreover, Wiley, with five criminal history points, has had extensive exposure to the criminal justice system, a factor which may be considered in determining whether a guilty plea is knowing and intelligent. *See State v. Bryant,* 378 N.W.2d 108, 110 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 23, 1986). His extensive writings to the court and participation in prior court proceedings indicate an even greater knowledge of the system. *See State v. Brant,* 407 N.W.2d 696, 698 (Minn. Ct.App.1987) (defendant initiated plea negotiations without legal assistance, was able to negotiate a presentence release and dismissal of other charges). Both the court and Wiley's counsel indicated Wiley was unusually knowledgeable about his constitutional rights within the criminal justice system. We conclude the trial court's failure to follow Rule 15.01 procedures does not invalidate the guilty plea.

This knowledge was not acquired solely while in prison following the plea. Wiley's pre-plea submissions to the court reveal a knowledge of many of the rights subject to Rule 15.01 questioning, including the right to counsel, due process rights to a hearing, and the right of confrontation. Notably, Wiley had shown an awareness both before and during a September 1985 hearing that he may have inadvertently waived some of his rights. Other references to his constitutional rights in Wiley's submissions to the court are too numerous to mention. It is unlikely questioning under Rule 15.01 would have added to his awareness of his rights at the time he pleaded guilty.

■ Wiley's claim he was incompetent when the plea was entered was properly rejected by the post-conviction court. Although Wiley's counsel testified he detected the odor of alcohol on Wiley's breath, he felt sure Wiley was competent, and the post-conviction court, also the judge who presided at the guilty plea hearing, noted Wiley "gave no appearance of such [consumption of liquor] to the Court." Wiley had been found competent following a Rule 20.01 examination of both his mental and physical condition.

Wiley also contends he was denied the effective assistance of counsel when he pleaded guilty, and therefore should be permitted to withdraw the plea. In order to establish such a claim, however, a defendant must show not only that counsel's representation fell below an objective standard of reasonableness, but that he was prejudiced, in that

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). While counsel's unpreparedness for trial could have met both tests, the post-conviction court was not required to reject the testimony of Wiley's counsel that he was prepared for trial.

■ Wiley testified at the guilty plea hearing that the reason he was pleading guilty was that, although he denied committing the offense, he didn't think the jury would believe him. Wiley's claim that the act of attempted intercourse was consensual was belied by the screams of the complaining witness, which were heard by police as they arrived at the house. Wiley's counsel made every reasonable effort to obtain discovery and evidentiary rulings

permitting them to impeach the complaining witness by her mental problems and alleged past sexual conduct. These were rejected by the trial court, as well as the motion to suppress statements made after Wiley's arrest. Wiley has not shown any actions defense counsel could *legally* have taken on his behalf would have altered the essential credibility contest between himself and the complaining witness, or his own assessment of the probable outcome.

■ Wiley's pro se and supplemental pro se briefs raise a number of other issues. He challenges the lack of a written complaint when he pleaded guilty, and the lack of cross-examination of his trial counsel at the post-conviction hearing, and claims denial of his right to counsel. The first argument is without merit. Wiley was plainly advised of the charge to which he was pleading guilty, attempted third degree criminal sexual conduct, and a written amended complaint charging that offense was filed the next day. This was done pursuant to an agreement, entered on the record, between the state and defense counsel. Wiley has shown no prejudice, nor any violation of the rules, from the lack of a written amended complaint on the day of the plea.

Wiley's trial counsel was cross-examined at the post-conviction hearing. Any deficiencies in that cross-examination are not relevant to this appeal, nor adequately established on this record. Wiley's claim to denial of his right to counsel appears based on his attempt to secure court-ordered funding to hire counsel of his choice. *See Carey v. State*, 767 F.2d 440, 441 (8th Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 536, 88 L.Ed.2d 467 (1985) (indigent defendant not entitled to counsel of his choice).

■ Wiley also claims the court should have honored his motion to remove the trial judge from the post-conviction proceeding. Wiley had earlier filed a notice of removal against another judge in the criminal prosecution itself. Therefore, the court required a showing of actual prejudice. *See* Minn. Stat. § 542.16, subd. 2 (1986). Although we do not endorse this application of the removal statute to a post-conviction pro-

ceeding, we do not find it clearly erroneous or prejudicial to Wiley.

■ It is not improper for the post-conviction petition to be heard by the trial judge. *Berg v. State*, 403 N.W.2d 316, 318 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. May 18, 1987). The statute provides only that the petition shall be promptly assigned to a judge in the district. Minn. Stat. § 590.02, subd. 3 (1986). There is no provision for automatic assignment to the trial judge. Arguably, the post-conviction proceeding can be considered a separate action, in which a defendant has a renewed right to one automatic removal of a judge under Minn.Stat. § 542.16, subd. 1.

In this case, it would have been better practice to assign the petition to another judge, particularly because the failure of the trial judge to conduct the questioning required by Rule 15.01 was at issue. We have concluded, however, that that failure did not invalidate the plea. Moreover, it is difficult in this case to see how Wiley was prejudiced by having the judge he was assigned. His voluminous pro se submissions would likely have had the same effect on any judge assigned. These writings demonstrate not only his knowledge of constitutional rights but also an attempt to overwhelm the system with claims and demands, from demands for copying services to submissions of irrelevant issues and demands for written responses to them.

## DECISION

The post-conviction court did not err in denying appellant's post-conviction petition for permission to withdraw his guilty plea.

Affirmed.