**STATE of Minnesota, Respondent,**

v.

**Julio A. Ayala LOPEZ, Appellant.**

**No. A10–678.**

Court of Appeals of Minnesota.

Feb. 8, 2011.

---

Lori Swanson, Attorney General, St. Paul, MN, Gordon Lynn Moore III, Nobles County Attorney, Kimberly Pehrson, Assistant County Attorney, Worthington, MN, for respondent.

Marisela E. Cantu, Eskens Gibson & Behm Law Firm, Chtd., Mankato, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; MINGE, Judge; and CRIPPEN, Judge.*

## OPINION

LANSING, Judge.

Before sentencing, Julio Lopez moved to withdraw his guilty plea to a misdemeanor theft charge. The district court denied Lopez's plea-withdrawal motion, relying on cases that require a defendant to prove that withdrawal is necessary to correct a

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

manifest injustice. On appeal Lopez argues that it is unfair and unjust to allow his guilty plea to stand because the district court failed to conduct the Minn. R.Crim. P. 15.02, subd. 1(3) inquiry and alternatively argues that he did not validly waive his right to counsel. We agree that on the facts of this case the fair-and-just standard for guilty-plea withdrawal is satisfied, and, in light of this determination, do not address Lopez's alternative argument.

## FACTS

Julio Lopez pleaded guilty to misdemeanor theft of compact discs valued at $30 from Walmart in December 2009. Lopez is a permanent legal resident of the United States but not a citizen. At the time of the offense he was eighteen, attending high school, and enrolled in courses for English as a Second Language. Following his older brother's death in a September 2009 car accident, Lopez began living with the family of his high school athletic coach.

When he was detained for the December 2009 theft, Lopez had an active arrest warrant for failure to pay a fine imposed for a similar misdemeanor theft conviction of Walmart compact discs valued at about $30 in June 2009. He was arrested on the warrant and appeared in court the following day on the new offense and also on the probation violation related to the earlier conviction. The district court advised him that they were addressing both charges.

The district court explained the new theft charge to Lopez and discussed his right to an attorney. Lopez said that he did not want an attorney and wanted to plead guilty. The district court carefully advised Lopez of all of the requirements listed in Minn. R.Crim. P. 15.02 for acceptance of a guilty plea except the requirement under subdivision 1(3) that, "if the defendant is not a citizen of the United States, a guilty plea may result in deportation, exclusion from admission to the United States, or denial of naturalization." Lopez did not receive or sign a written 15.02 plea petition incorporating the required provisions.

After accepting Lopez's plea to the December 2009 offense, the district court addressed the probation violation charge on the June 2009 conviction. While explaining Lopez's right to an attorney on the probation violation, the district court asked if Lopez understood that a lawyer could be appointed to represent him, and Lopez asked the district court to appoint a lawyer.

Lopez's sentencing on the December 2009 misdemeanor conviction was originally scheduled for February 2, 2010, but was postponed to March 2, 2010, because of an immigration hold. After a twenty-eight-day detention, the United States Citizenship and Immigration Services placed Lopez in deportation proceedings.

Before sentencing, and following appointment of an attorney, Lopez moved to withdraw his guilty plea on two grounds. First, he argued that his plea was unintelligently entered because he did not fully understand the consequences of the plea—the risk of deportation. Second, he argued that he had not been given the required rule 15.02, subdivision 1(3) advisory that adverse immigration consequences could result from his guilty plea.

The district court denied Lopez's motion to withdraw his guilty plea. The memorandum accompanying the order denying the motion did not indicate whether the decision was made under the fair-and-just standard that applies to a request for a guilty-plea withdrawal before sentencing or the manifest-injustice standard that applies after sentence is imposed. But the memorandum relies primarily on cases de-

cided under the manifest-injustice standard.

Lopez appeals, asserting that the district court abused its discretion by denying his presentence motion for plea withdrawal and that he did not validly waive his right to counsel.

## ISSUE

Does the record, as a matter of law, satisfy the Minn. R.Crim. P. 15.05 standard for plea withdrawal?

## ANALYSIS

### I

■ Guilty pleas facilitate the efficient administration of justice, and more than a change of heart is needed to withdraw a guilty plea. *See Kim v. State,* 434 N.W.2d 263, 266 (Minn.1989) (discussing need to protect integrity of pleas). Guilty pleas may be withdrawn only if one of two standards is met. First a plea may be withdrawn if "withdrawal is necessary to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. A defendant can establish manifest injustice by showing that the plea was "not accurate, voluntary, and intelligent." *Perkins v. State,* 559 N.W.2d 678, 688 (Minn.1997). If a defendant establishes manifest injustice, a timely motion to withdraw must be granted. *Shorter v. State,* 511 N.W.2d 743, 746 (Minn.1994). Second, before a defendant is sentenced, a plea can be withdrawn "if it is fair and just to do so." Minn. R.Crim. P. 15.05, subd. 2. The fair-and-just standard is less demanding than the manifest-injustice standard. *State v. Theis,* 742 N.W.2d 643, 646 (Minn. 2007).

■ In determining whether a defendant's reason for withdrawal is fair and just, a district court must "give 'due consideration' to two factors: (1) the reasons a defendant advances to support withdrawal and (2) [any] prejudice granting the motion would cause the [s]tate [as a result of] reliance on the plea." *State v. Raleigh,* 778 N.W.2d 90, 97 (Minn.2010) (citing Minn. R.Crim. P. 15.05, subd. 2). We also consider "the entire context in which [the defendant's] plea of guilty occurred, as demonstrated by the record." *State v. Abdisalan,* 661 N.W.2d 691, 695 (Minn. App.2003), *review denied* (Minn. Aug. 19, 2003). The defendant has the burden to prove that a fair-and-just reason exists to withdraw his plea, and it is the state's burden to show any prejudice that allowing withdrawal would cause. *Id.; Kim,* 434 N.W.2d at 266. Generally, we review the district court's application of the fair-and-just standard for an abuse of discretion. *Kim,* 434 N.W.2d at 266.

■ Even though Lopez moved to withdraw his plea before sentencing, the district court did not consider whether Lopez had shown a fair-and-just reason for plea withdrawal, but instead denied Lopez's motion relying on cases that address the more stringent standard of manifest injustice. In rejecting the alleged invalidity of Lopez's plea, the district court relied primarily on the distinction between the direct and collateral consequence of a guilty plea as described in *Alanis v. State,* 583 N.W.2d 573, 579 (Minn.1998). Essentially the district court reasoned that because deportation is a collateral consequence of a guilty plea, the failure to advise a defendant of the risk of deportation does not make the guilty plea unintelligent and withdrawal is therefore not necessary to correct a manifest injustice. On the issue of failing to conduct the inquiry required under rule 15.02, subdivision 1(3), the district court also applied *Alanis* and again relied on the distinction between direct and collateral consequences.

Although the district court's approach parallels *Alanis*'s analysis of a postsen-

tencing claim of manifest injustice based on constitutional invalidity, for four reasons *Alanis* is not controlling on the issue of whether the district court's rule 15.02, subdivision 1(3) deficiency provides a fair-and-just reason for Lopez to withdraw his guilty plea.

First, *Alanis* addresses only whether a manifest injustice occurs when a defendant is not told of the risk of deportation; it does not address whether the absence of this advisory would constitute a fair-and-just reason for plea withdrawal. 583 N.W.2d at 578–79. Second, *Alanis* was decided before the 1998 amendment to Minn. R.Crim. P. 15.02 that added the requirement that courts advise a defendant on the possible risks of deportation as a result of a guilty plea, and the *Alanis* court expressly declined to address whether such an advisory was required, stating "we believe the [criminal-rules] committee is a more appropriate forum for answering it." *Id.* at 579. Third, the criminal-rules committee answered the question in its 1998 amendment to rule 15.02 by requiring that the court or counsel question the defendant to ascertain whether the defendant "[u]nderstands that, if the defendant is not a citizen of the United States, a guilty plea may result in deportation, exclusion from admission to the United States, or denial of naturalization as a United States citizen." Minn. R.Crim. P. 15.02, subd. 1(3). The 1998 amendment had the effect of imposing a higher burden on district courts than the holding of *Alanis*. Minn. R.Crim. P. 15.02, subd. 1(3); *cf. Alanis*, 583 N.W.2d at 578–79. And, because Lopez had no attorney the duty of inquiry effectively fell to the district court in this case. Fourth, the comment to rule 15.02 states that "at least some limited inquiry is necessary on the record before a misdemeanor guilty plea is accepted, and [r]ule 15.02 prescribes the minimal standards for this questioning." *Cf. State v.*

*Johnson*, 514 N.W.2d 551, 555 n. 8 (Minn. 1994) (recognizing that comments to rules are advisory).

Because *Alanis* does not provide a basis for determining whether Lopez presented a fair-and-just reason for plea withdrawal, and because the district court apparently decided the issue on the more stringent standard of manifest injustice rather than the appropriate standard of a fair-and-just reason, we turn to the record to determine whether the facts and circumstances satisfy the fair-and-just standard. We start with the fundamental requirement in the Minnesota Rules of Criminal Procedure that, before accepting a guilty plea to a misdemeanor, the district court or counsel must question a defendant about whether he "[u]nderstands that, if [he] is not a citizen of the United States, a guilty plea may result in deportation, exclusion from admission to the United States, or denial of naturalization as a United States citizen." Minn. R.Crim. P. 15.02, subd. 1(3). The state concedes that the district court failed to conduct this inquiry, and thus the record supports the facts that provide a basis for Lopez's claim. *Cf. Raleigh*, 778 N.W.2d at 97 (holding no fair-and-just reason for plea withdrawal because defendant's reasons not substantiated by the record); *Butala v. State*, 664 N.W.2d 333, 340–41 (Minn.2003) (holding fair-and-just standard not satisfied because defendant's reasons not supported by evidence in record).

We recognize the demanding circumstances in which district court judges function and have rejected arguments that district courts must comport with rule 15's lists of questions and advisories verbatim. *See State v. Doughman*, 340 N.W.2d 348, 351–53 (Minn.App.1983) (holding that district court's failure to follow rule 15.01's questions verbatim does not make guilty plea invalid and is not, therefore, a mani-

fest injustice). But we also recognize that the requirements of rule 15.02 are fundamental and are defined as the minimum standards for insuring the validity of a guilty plea. Minn. R.Crim. P. 15.02 cmt.

A district court's failure to comply with a rule 15 inquiry warrants plea withdrawal under the manifest-injustice standard when the failure denies a defendant a constitutional right. *See, e.g., Vernlund v. State,* 589 N.W.2d 307, 310–11 (Minn.App. 1999) (holding plea invalid because court did not question defendant to establish factual basis as rule 15.02 requires). And plea withdrawal can be justified if a district court omits a particular rule 15 advisory and the omission denies a defendant a constitutional right. *See, e.g., State v. Foncesa,* 505 N.W.2d 370, 372–73 (Minn. App.1993) (granting plea withdrawal and holding manifest injustice occurred because district court failed to question defendant individually about her understanding of right to counsel as required by rule 15.03, subdivision 1). Because these cases were decided under the higher, manifest-injustice standard, they are instructive on the issue of whether the omission of a required advisory constitutes a fair-and-just reason for plea withdrawal.

Considering not only the district court's failure to conduct the inquiry to determine that Lopez understood the possibility of adverse immigration consequences, but also the particular context in which Lopez entered his guilty plea, the record establishes that a fair-and-just reason warrants plea withdrawal. Lopez was not represented by counsel. When reviewing challenges to guilty pleas entered without the benefit of counsel, appellate courts "have been strict." *State v. Motl,* 337 N.W.2d 664, 666 (Minn.1983). Because Lopez was unrepresented, we cannot presume that he was made aware of his rights or the possible consequences of entering a guilty plea

before he appeared in court or off the record at his court appearance. *See Shackelford v. State,* 312 Minn. 602, 253 N.W.2d 149, 150 (1977) (presuming counsel advised defendant of rights and consequences of plea when court neglected to question defendant about rights waived); *Doughman,* 340 N.W.2d at 353 (considering that defendant testified that he discussed legal rights with counsel in upholding validity of plea when court did not ask rule 15.01 questions verbatim).

Furthermore, the district court did not go through a rule 15.02 petition with Lopez or have Lopez sign a written petition. Consequently, Lopez was not advised through a written petition that pleading guilty could lead to adverse immigration consequences. *See State v. Wiley,* 420 N.W.2d 234, 237 (Minn.App.1988) (upholding validity of plea when court did not ask all rule 15.01 questions after determining defendant was aware of constitutional rights because he testified that he went through rule 15 petition with counsel), *review denied* (Minn. Apr. 26, 1998); *see also* Minn. R.Crim. P. 15 app. C (providing written petition to enter guilty plea by pro se defendant).

It is also significant that the record indicates that Lopez has had only limited experience with the criminal justice system. *See Wiley,* 420 N.W.2d at 237 (holding that failure to ask rule 15.01 questions did not make defendant's plea unintelligent in part because his five criminal-history points indicated "extensive exposure to [and knowledge about] the criminal justice system"). In Lopez's only previous experience with the criminal justice system, his June 2009 misdemeanor theft conviction, he waived his right to counsel and pleaded guilty.

Finally, the advisory that Lopez failed to receive—that his guilty plea could have adverse immigration consequences— is deeply important. *See Padilla v. Ken-*

*tucky*, —— U.S. ——, ——, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010) (holding counsel must inform client whether plea carries risk of deportation). In *Padilla*, the Supreme Court recognized that deportation is a grave consequence and "that preserving the [defendant's] right to remain in the United States may be more important to the [defendant] than any potential jail sentence." *Id.* at 1483 (quotation omitted). *Padilla* reinforces the wisdom of rule 15.02, subdivision 1(3)'s advisory because the Supreme Court's analysis focuses on defendants making informed decisions and not unknowingly subjecting themselves to severe adverse immigration consequences. Because Lopez did not have an attorney, an attorney's Sixth Amendment duty to advise of immigration consequences is not at issue. But, although we cite *Padilla* only for its recognition of the gravity of immigration consequences, we recognize its potentially broader implications. *See* Note, 124 Harv. L.Rev. 199, 206 (2010) (expressing view that "*Padilla* will inevitably affect lower courts' existing approaches to the direct-collateral distinction").

Prejudice to the state caused by granting the plea-withdrawal motion has not been established. Initially, in its response to Lopez's presentence motion, the state did not claim any prejudice. On appeal, the state asserts that it would be prejudiced by the passage of time or because it did not obtain videotapes or written reports from Walmart. The mere passage of time is not an adequate proof of prejudice to weigh against a request for plea withdrawal absent a showing that the delay was deliberate and inexcusable. *James v. State*, 699 N.W.2d 723, 728 (Minn.2005).

The district court's apparent evaluation of the motion under a manifest-injustice standard rather than a fair-and-just standard may in some circumstances warrant a remand for reconsideration. On this record, however, we conclude as a matter of law that Lopez demonstrated a fair-and-just reason for plea withdrawal. Consequently, we reverse and remand for withdrawal of his guilty plea.

## II

Lopez alternatively argues that he did not validly waive his right to counsel. Because we reverse on the grounds that Lopez has established a fair-and-just reason for plea withdrawal as a matter of law, we do not address his alternative grounds for reversal.

## DECISION

The district court's failure to inquire whether Lopez understood that, if he was not a United States Citizen, a guilty plea could result in adverse immigration consequences, as required by Minn. R.Crim. P. 15.02, subd. 1(3), is a fair-and-just reason to grant plea withdrawal in light of the particular circumstances in which Lopez pleaded guilty: Lopez was not represented by counsel, entered a plea of guilty without signing a written plea petition, and had limited experience with the criminal justice system. Accordingly, we conclude as a matter of law that Lopez satisfied the fair-and-just standard for plea withdrawal.

**Reversed and remanded.**