Rene Reyes CAMPOS, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A10–1395.

Court of Appeals of Minnesota.

May 16, 2011.

Bruce D. Nestor, De León & Nestor, LLC, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; ROSS, Judge; and BJORKMAN, Judge.

## OPINION

STONEBURNER, Judge.

Appellant challenges the denial of his post-sentencing motion to withdraw his guilty plea, arguing that under *Padilla*, 559 U.S. at ——, 130 S.Ct. at 1486, his counsel was constitutionally ineffective by failing to advise him that his plea carried a risk of deportation. Appellant argues that the district court erred by concluding that *Padilla* does not apply retroactively to cases on collateral review. We reverse and remand.

## FACTS

Appellant Rene Reyes Campos was 17 years old when he was charged with felony simple robbery committed for the benefit of a gang in May 2009. Campos has been a lawful permanent resident of the United States since 2002. The state moved for adult certification.

In July 2009, Campos, who was represented by counsel, waived his right to a certification hearing and pleaded guilty to an amended charge of simple robbery under an agreement that resulted in a stay of imposition of sentence for three years and probationary conditions, including 365 days in the workhouse. Campos did not discuss his immigration status with his attorney and was not advised by his attorney of the effect of the plea agreement on his immigration status. The record does not reflect that Campos was provided with the general immigration advisory required by Minn. R.Crim. P. 15.01, subd. 1(6)(*l*).

In March 2010, the United States Supreme Court held that federal-constitutional law requires counsel to advise his or her client whether his or her plea carries a risk of deportation. *Id.* at ——, 130 S.Ct. at 1486. Failure to so advise renders counsel constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.*

In June 2010, Campos moved to withdraw his guilty plea, arguing that he was prejudiced by ineffective assistance of counsel, resulting in an invalid plea, the acceptance of which constitutes a manifest injustice. In an affidavit supporting his motion, Campos asserts that, as a result of the plea agreement, he will lose, and never be able to regain, permanent-resident status and is very likely to be deported. Campos asserts that the factor triggering mandatory deportation is the condition that he serve 365 days in the workhouse and that had he been required to serve only 364 days in the workhouse, he would not be deported. Campos asserts that if he had known about the deportation consequences, he would not have pleaded guilty under the terms of the agreement.

The district court held that *Padilla* does not apply retroactively and because Minnesota law, as it existed at the time of the plea, did not require counsel to inform Campos of the immigration consequences of his plea, Campos was not deprived of effective assistance of counsel. The district court concluded that Campos had not proved by a preponderance of the evidence that a manifest injustice occurred, warranting withdrawal of his guilty plea, which was, the district court found, accurate, voluntary and intelligent. Campos's

motion to reconsider was denied, and this appeal followed.

## ISSUE

Does *Padilla*, which holds that an attorney's failure to advise a client that his or her plea carries a risk of deportation is constitutionally deficient representation, apply retroactively?

## ANALYSIS

### I. Standard of review

■ A district court's decision to grant a plea withdrawal is reviewed for an abuse of discretion. *Barragan v. State,* 583 N.W.2d 571, 572 (Minn.1998). A criminal defendant does not have an absolute right to withdraw a plea of guilty once it has been entered but may withdraw a guilty plea after sentencing on a timely motion and proof to the satisfaction of the court that withdrawal of the plea is necessary to correct a manifest injustice. Minn. R. Civ. P. 15.05, subd. 1.

### II. Ineffective assistance of counsel

■ Campos argues that he is entitled to withdraw his guilty plea to correct a manifest injustice because he received constitutionally ineffective assistance of counsel when counsel failed to advise him of the immigration consequences of his plea, rendering his plea invalid. When an accused is represented by counsel, the validity of a plea "depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *State v. Ecker,* 524 N.W.2d 712, 718 (Minn. 1994) (quotations omitted). In determining claims of ineffective assistance of counsel, Minnesota courts apply the standard set by the United States Supreme Court in *Strickland,* 466 U.S. 668, 104 S.Ct. 2052. *Alanis v. State,* 583 N.W.2d 573, 577 (Minn.1998).

Under the *Strickland* test, the petitioner must demonstrate:

(1) that the counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for the counsel's errors, the outcome of the proceedings would have been different.

*Id.* In *Alanis,* the Minnesota Supreme Court rejected the argument that a guilty plea was not voluntary and plea withdrawal was necessary to correct a manifest injustice where trial counsel failed to warn defendant of the possible immigration consequences of the plea. *Id.* at 578. The cornerstone of the *Alanis* decision is that such a warning is not required because a criminal defendant is only entitled to be informed of the direct consequences of a guilty plea, defined as "those [consequences] which flow definitely, immediately and automatically from the guilty plea, namely the maximum sentence to be imposed and the amount of any fine." *Id.* The supreme court concluded that deportation is not a definite, immediate, or automatic consequence of a plea, and because Alanis was warned about the maximum sentence and fine to be imposed, the district court did not err in determining that plea withdrawal was not necessary to correct a manifest injustice. *Id.* at 578–79. And the supreme court held that, because immigration consequences are collateral consequences of the plea, counsel had no obligation to advise Alanis of the deportation possibility and his representation could not have fallen below the objective standard of reasonableness required by *Strickland. Id.* at 579.

### A. Padilla v. Kentucky

In *Padilla,* the United States Supreme Court noted that it had never applied a distinction between direct and collateral consequences to define the scope of consti-

tutionally effective assistance of counsel under *Strickland.* The Supreme Court stated that the "collateral versus direct distinction is . . . ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Padilla,* 559 U.S. at ——, 130 S.Ct. at 1482. The Supreme Court held in *Padilla* that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at ——, 130 S.Ct. at 1481–82. Applying *Strickland* to Padilla's postconviction challenge to the validity of his guilty plea, the Supreme Court noted that the first prong of the *Strickland* analysis "is necessarily linked to the practice and expectations of the legal community" and cited numerous sources of professional standards to support its statement that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at ——, 130 S.Ct. at 1482–83.

Noting that, in Padilla's case, "the terms of the relevant immigration statutes are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction," the Supreme Court stated that "[t]his is not a hard case in which to find deficiency" in counsel's performance. *Id.* at ——, 130 S.Ct. at 1483. The Supreme Court held that "counsel must inform her client whether his plea carries a risk of deportation" and concluded that Padilla had "sufficiently alleged that his counsel was constitutionally deficient." *Id.* at ——, 130 S.Ct. at 1486, 1487. But the Court remanded for a determination of whether Padilla could demonstrate prejudice as a result of the deficiency. *Id.* at ——, 130 S.Ct. at 1487. The Supreme Court specifically rejected the argument that its holding would cause a "flood" of guilty-plea challenges, noting that "[t]hose who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea." *Id.* at ——, 130 S.Ct. at 1485. The Supreme Court stated that "a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential." *Id.* at ——, 130 S.Ct. at 1485–86.

## B.  Effect of *Padilla*

■   *Padilla* effectively overruled *Alanis*'s holding as it pertains to the risk of deportation arising from a guilty plea. Whether *Padilla* applies in Minnesota to convictions final at the time *Padilla* was decided is a purely legal issue, reviewed de novo. *See State v. Houston,* 702 N.W.2d 268, 270 (Minn.2005) (citing *O'Meara v. State,* 679 N.W.2d 334, 338 (Minn.2004)), for the proposition that the determination of whether a decision applies retroactively or non-retroactively is a legal question that is reviewed de novo.

The Minnesota Supreme Court in *Danforth v. State,* 761 N.W.2d 493, 500 (Minn. 2009), adopted the retroactivity principles outlined in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague,* which was "tailored to the unique context of federal habeas," the Supreme Court adopted the approach that a *new* rule of criminal procedure would not "be retroactively applied to a defendant's case once the defendant's case had become final," except in two circumstances: "(1) when the rule places specific conduct beyond the power of the criminal law-making authority to proscribe, or (2) when the rule is a watershed rule of criminal procedure, and is a rule without which the likelihood of an accurate conviction would be seriously diminished." *Danforth,* 761 N.W.2d at 496, 497 (quotation omitted).

The first consideration under *Teague* is whether the holding in *Padilla* announces a new rule of criminal procedure "or whether it is merely a predictable extension of a pre-existing doctrine." *See Houston,* 702 N.W.2d at 270. If the former, it will not apply in this case; if the latter, it will apply in this case. *See O'Meara,* 679 N.W.2d at 339–40.

Campos argues that *Padilla* merely applied the long-standing principles regarding ineffective assistance of counsel enunciated in *Strickland* to specific facts and did not announce a new rule of constitutional criminal procedure. We agree. Given (1) the procedural posture of *Padilla* (a collateral attack on a guilty plea); (2) the clear references in the opinion to its application to collateral proceedings attacking guilty pleas; (3) the analysis under long-standing principles of the right to effective assistance of counsel; and (4) the absence of any mention of retroactivity, the conclusion that the opinion does not announce a new rule of criminal procedure seems self-evident to this court. *See Padilla,* 559 U.S. at ——, 130 S.Ct. at 1478 (stating "[i]n this postconviction proceeding ..."); 1485–86 (discussing "nature of relief secured by a successful collateral challenge to a guilty plea" and "collateral challenge to a conviction"). Nonetheless, we recognize that some courts that have addressed whether *Padilla* applies retroactively have concluded that it does announce a new rule of criminal procedure. *See Marroquin v. United States,* No. M–10–156, 2011 WL 488985, at *2 & nn. 3–4 (S.D.Tex. Feb. 4, 2011) (holding that *Padilla* does not announce a new rule of constitutional criminal procedure and listing in footnotes three cases finding that *Padilla* announced a new rule of criminal procedure and seven cases finding that *Padilla* is simply the application of an old rule).

■ Because *Padilla*'s holding effectively overrules the result of the "collateral consequences" label that many state and federal courts have given to the risk of deportation, we recognize the temptation to conclude that it announces a new rule of criminal procedure. But, in addition to the fact that the Supreme Court applied the rule established in *Padilla* to a collateral attack on a final conviction, we find the reasoning of the United States District Court for the Southern District of Texas in *Marroquin* to be persuasive in explaining why application of *Teague*'s "new rule" analysis does not support a finding that *Padilla* announced "new ground"[1] for evaluating the effectiveness of counsel. *Id.* at *4–6.

In *Marroquin,* the court rejected the government's argument that "*Strickland*'s application in *Padilla* yields a result so novel that it forges a new rule, one not dictated by precedent." *Id.* at *5 (quotation omitted). The court noted that prior Supreme Court cases have applied *Strickland* to new sets of facts and the resulting holdings, relying on professional standards and expectations, did not establish new rules. *Id.*

■ Since 2006, Minnesota has required a district court judge to ensure that defense counsel has told the defendant and that the defendant understands that "[i]f the defendant is not a citizen of the United States, a guilty plea may result in deportation, exclusion from admission to the United States, or denial of naturalization as a

---

1. In *Padilla,* the United States Supreme Court acknowledged that it must be careful about "recognizing new grounds for attacking the validity of guilty pleas" but noted that "in the 25 years since we first applied *Strickland* to claims of ineffective assistance at the plea stage, practice has shown that pleas are less frequently the subject of collateral challenges than convictions obtained after a trial." 559 U.S. at ——, 130 S.Ct. at 1485.

United States citizen," before accepting a criminal defendant's guilty plea. Minn. R.Crim. P. 15.01, subd.1(6)(*l*). Additionally, comments to this rule have long contained some of the same information cited by the Supreme Court regarding the importance of immigration information to a criminal defendant contemplating a guilty plea.

> In the Antiterrorism and Effective Death Penalty Act of 1996, . . . and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, . . . Congress extensively amended the Immigration and Nationality Act and greatly expanded the grounds for deportation of non-citizens convicted of crimes. Consequently, many non-citizens pleading guilty to felony charges and even to a number of non-felony charges will subject themselves to deportation proceedings. The consequences of such proceedings will often be more severe and more important to the non-citizen defendant than the consequences of the criminal proceedings. It is therefore appropriate that defense counsel advise non-citizen defendants of those consequences and that the court inquire to be sure that has been done. As to the obligation of defense counsel in such situations, see ABA Standards for Criminal Justice, Pleas of Guilty, 14–3.2 (2d ed.1982). The requirement of inquiring into deportation and immigra-

tion consequences does not mean that other unanticipated non-criminal consequences of a guilty plea will justify later withdrawal of that plea.

Minn. R.Crim. P. 15 cmt. (2006).[2]

■ We recognize that, under *Teague*, a rule is generally considered "new" if it is not "dictated" by precedent existing at the time a conviction became final. 489 U.S. at 301, 109 S.Ct. at 1070. This principle ensures that reasonable, good-faith interpretations of existing precedent are validated even if those interpretations are later deemed to conflict with the holdings in subsequent cases. *Houston*, 702 N.W.2d at 271. The test is whether "reasonable jurists hearing petitioner's claim at the time of his conviction became final would have felt compelled by existing precedent to rule in his favor." *Id.* (quotation and emphasis omitted).

But the rule of criminal procedure at issue embodies the constitutional entitlement to effective representation. What constitutes effective assistance of counsel is examined under *Strickland,* and, as the state acknowledges in this case, a defense attorney's duty to properly advise his client before a guilty plea is hardly new. Given developments in immigration policy and the post-*Alanis* changes to the Minnesota Rules of Criminal Procedure, we conclude that reasonable jurists, at the time Campos was sentenced, could have con-

---

**2.** At oral argument on appeal, Campos argued that violation of Rule 15.01, mandating that a non-citizen defendant be advised of immigration consequences of a plea is a separate ground for reversal in this case. *See State v. Lopez,* 794 N.W.2d 379, 380 (Minn.App.2011) (holding that an unrepresented defendant who entered a plea without signing a written plea petition and who had limited experience with the criminal-justice system satisfied the fair-and-just standard for pre-sentence plea withdrawal). But Campos only asserted the Rule 15 violation in a motion to reconsider;

the district court never addressed the Rule 15 violation, and Campos did not raise the Rule 15 violation as an issue on appeal. We therefore decline to address the merits of this argument. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996) (stating that appellate courts will generally not consider matters not argued to and considered by the district court); *State v. Butcher,* 563 N.W.2d 776, 780 (Minn.App. 1997) (stating that issues not briefed on appeal are waived), *review denied* (Minn. Aug. 5, 1997).

cluded that Campos's counsel was ineffective.

Because we conclude that *Padilla* does not announce a new rule of criminal procedure, we do not reach the argument that, even if a new rule was announced, it is a watershed rule that should be applied retroactively.[3]

## DECISION

Because *Padilla* does not announce a new rule of criminal procedure, the district court erred by concluding that *Padilla* does not apply to Campos's ineffective-assistance-of-counsel claim based on coun-

sel's failure to advise him that his plea carries the risk of deportation. We reverse and remand for consideration of Campos's claim of ineffective assistance of counsel under *Strickland,* consistent with the holding in *Padilla.*

**Reversed and remanded.**

3. We note, however, that the Minnesota Supreme Court, in adopting the retroactivity principles established in *Teague,* declined to be bound by the United States Supreme Court's determinations of when fundamental fairness might require retroactive application of a new constitutional safeguard. *Danforth,* 761 N.W.2d at 500.