*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1936**

Junious Taylor, Jr., petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 17, 2015
Affirmed
Connolly, Judge**

Ramsey County District Court
File No. 62-CR-13-7736

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

In challenging his domestic-assault conviction, appellant argues that the district court should have granted his motion to withdraw his guilty plea on three grounds: (1) his plea was not intelligent because he was unaware that the conviction would require him to register as a predatory offender; (2) his plea resulted from a mutual mistake because his counsel, respondent's counsel, and the district court did not tell him that predatory-offender registration was a consequence of his plea; and (3) he received ineffective assistance of counsel. Because predatory-offender registration is a collateral consequence, and not a direct consequence, of a guilty plea, we affirm.

## FACTS

Appellant Junious Taylor Jr. assaulted his live-in girlfriend, S.P., at their shared apartment. S.P. called the police, and appellant was arrested later that day. Because of his two prior qualified domestic-violence convictions, he was charged with felony domestic assault. A domestic assault no-contact order (DANCO) was issued for S.P., and appellant pleaded guilty to felony domestic assault. Neither his attorney, nor the prosecutor, nor the district court realized that appellant was required to register as a predatory offender after this conviction. Thus, appellant pleaded guilty without knowing he would need to register as a predatory offender.

After visiting S.P.'s apartment, appellant was charged with violating the DANCO. He later pleaded guilty to this charge. For the felony domestic-assault charge, appellant received a stayed sentence of 21 months in prison and was placed on probation for five

years. He was also sentenced to 120 days in the workhouse as a condition of his probation. For the violation of the DANCO, he was sentenced to 27 months in prison. It was then discovered that, because of prior convictions and his current domestic-assault conviction, appellant was required to register as a predatory offender pursuant to Minn. Stat. § 243.167 (2012).

After he was notified that he was required to register as a predatory offender, appellant moved to withdraw his guilty plea for the felony domestic-assault conviction. His motion was denied, and he challenges the denial.

## DECISION

### I.

Appellant argues that his plea was not intelligent because he was unaware of the predatory-offender registration requirement when he pleaded guilty, and this resulted in a manifest injustice. We disagree. A court must allow a defendant to withdraw a guilty plea "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice occurs when a plea is not accurate, voluntary, or intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). Whether the plea is invalid, resulting in manifest injustice, is "a question of law which we review de novo." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

"The purpose of the requirement that the plea be intelligent is to ensure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248,

251 (Minn. 1983). "'Consequences' refers to a plea's *direct* consequences." *Raleigh*, 778 N.W.2d at 96 (emphasis added).

Appellant argues that predatory-offender registration is a direct consequence because it occurs immediately, definitely, and automatically when a defendant enters a guilty plea. *See Kaiser v. State*, 641 N.W.2d 900, 904 (Minn. 2002) (finding that sexual-offender registration is an immediate, definite, and automatic consequence of a guilty plea). We disagree. *Kaiser* is factually analogous. *Id.* at 902 (stating that defendant was unaware his guilty plea would require him to register as a predatory offender). The defendant in *Kaiser* argued that predatory-offender registration was a direct consequence of his guilty plea because it occurred immediately, definitely, and automatically afterwards. *Id.* at 904. But "direct consequences are those . . . [that] flow . . . from the punishment to be imposed," *id.*, and "the predatory offender registration statute . . . [is] civil and regulatory, and not penal." *Id.* at 905 (citing *Boutin v. LaFleur*, 591 N.W.2d 711, 717 (Minn. 1999) (stating that predatory-offender registration is regulatory and not punitive because it does not require affirmative disability or restraint; registration statutes are not typically regarded as punishment; and registration does not involve confinement and is not intended to be retributive)). Predatory-offender registration is civil in nature: "the consequence of registering as a predatory offender involves no additional incarceration and has no relation to [appellant's] punishment . . . ." *Kaiser*, 641 N.W.2d at 905. Because predatory-offender registration is civil and regulatory in nature, we conclude it is a collateral, not a direct, consequence of a guilty plea.

4

Appellant relies on *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), stating it changes the analysis because it indicates that a plea is unintelligent if a defendant is unaware of a consequence that is closely connected to the criminal process. *See Padilla*, 559 U.S. at 365, 130 S. Ct. at 1481 ("We . . . have never applied a distinction between direct and collateral consequences . . . Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."). In *Padilla*, counsel's assistance was ineffective because the defendant was not told his plea could result in deportation, which is typically categorized as a collateral consequence. *Id.* at 367, 130 S. Ct. at 1482. But appellant's reliance is misplaced: *Padilla* does not preclude other courts from using the direct and collateral distinction in contexts other than deportation. *See, e.g.*, *Sames v. State*, 805 N.W.2d 565, 569 (Minn. App. 2011) (declining to extend *Padilla* beyond deportation into the context of firearm possession, a collateral consequence).

Appellant questions the continuing validity of *Sames* and *Kaiser* because both cases rely on *Alanis v. State*, 583 N.W.2d 573 (Minn. 1998). We do not. This court has declined to extend *Padilla* to collateral consequences apart from deportation and continues to rely on *Alanis* for the direct and collateral distinction for consequences other than deportation. *See, e.g.*, *Sames*, 805 N.W.2d at 568 (deciding, that, after *Padilla*, "[this court is] bound to follow the analytical framework of [*Alanis*], which relies on the distinction between direct . . . and collateral consequences . . . The applicable caselaw requires [this court] to ask whether a particular consequence of a guilty plea is a direct

5

. . . or a collateral consequence."). We conclude that predatory-offender registration remains a collateral consequence after *Padilla*.

Finally, appellant relies on *Kaiser* to argue that, because *Kaiser* finds predatory-offender registration immediate, definite, and automatic, predatory-offender registration is more heavily tied to the criminal process than deportation. *See Kaiser*, 641 N.W.2d at 904. But *Kaiser* states that this distinction alone is not dispositive, *id.*, and appellant cites no authority to explain why registration is what he calls the "most severe penalty." Because appellant was unaware of a collateral consequence, rather than a direct consequence, we conclude that his plea was intelligent and no manifest injustice occurred.

## II.

Appellant argues that there was a mutual mistake warranting withdrawal of his guilty plea because the prosecutor, appellant's counsel, and the district court did not know that appellant would need to register as a predatory offender if he pleaded guilty. We disagree.

For this assertion, appellant relies on *State v. DeZeler*, 427 N.W.2d 231, 235 (Minn. 1988) (holding that, when both attorneys were mistaken as to a defendant's criminal-history score and their mistake resulted in a longer sentence, the defendant could withdraw his guilty plea because he entered it relying on their assertion that the defendant's criminal-history score would result in a lesser sentence). However, appellant's reliance on *DeZeler* is again misplaced. *DeZeler* concerns a mutual mistake as to a defendant's criminal-history score that dramatically affected his sentence. *Id.*; *see*

*also Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989) (stating that *DeZeler* does not apply to a case where a defendant was unaware of a collateral consequence). Because *DeZeler* applies only to direct consequences, and no authority applies mutual mistake to collateral consequences, we conclude that the mutual mistake in this case is not a reversible error allowing appellant to withdraw his guilty plea.

### III.

"We review the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such a claim involves a mixed question of law and fact." *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013).

> The defendant must affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting and citing *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). If a court concludes that a defendant does not meet one prong, the court need not consider the other prong. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

Appellant contends that, because he was not informed that he would have to register as a predatory offender, his counsel's representation fell below an objective standard of reasonableness, and he did not receive the effective assistance of counsel afforded to him by the Sixth Amendment of the United States Constitution. We disagree. To support this contention, appellant relies on his previous argument that predatory-

offender registration is a direct consequence because it comes immediately, definitely and automatically from a guilty plea. But, a consequence must also be penal in nature to be considered a direct consequence. *See Kaiser*, 641 N.W.2d at 904. Thus, we conclude that failure to warn appellant of the predatory-offender registration requirement did not fall below an objective standard of reasonableness.

Finally, appellant relies on *Campos v. State*, 798 N.W.2d. 565, 568 (Minn. App. 2011), *rev'd on other grounds by* 816 N.W.2d 480 (Minn. 2012), *and cert. denied*, 133 S. Ct. 938 (2013), to assert that *Padilla* overruled *Kaiser*. But *Campos* applies the *Padilla* holding only to deportation and states that *Padilla* effectively overruled "*Alanis*'s holding as it pertains to the risk of deportation arising from a guilty plea," 798 N.W.2d at 568, and the "collateral consequences label that many state and federal courts have given to the risk of deportation." *Id.* at 569 (quotation omitted). Thus, we do not agree that *Padilla* overruled *Kaiser*.

Because appellant only relies on *Bauder v. Dep't of Corr. Fla.*, 619 F.3d 1272, 1275 (11th Cir. 2010), to support his argument that courts are now ignoring the distinctions between collateral and direct, civil and regulatory, and criminal and civil, we find that argument unpersuasive.[1]

---

[1] *Bauder* is not even persuasive authority. In *Bauder*, a defendant whose attorney told him he would not be civilly committed because of his guilty plea was civilly committed. *Bauder*, 619 F.3d at 1273. The conviction was reversed and remanded only after the court found that the defendant had been misinformed. *Id.* at 1273-74. *Bauder* is distinguishable because appellant's counsel failed to inform him of potential registration consequences instead of affirmatively misinforming him of consequences. *Id.* at 1273; *see also id.* at 1275 ("Counsel's deficient performance was not his inability to anticipate a

We conclude that appellant did not receive ineffective assistance of counsel. Admittedly, "it is unquestionably the better practice for an attorney to inform clients of the collateral consequences of a guilty plea." *Kaiser v. State*, 621 N.W.2d 49, 54-55 (Minn. App. 2001), *aff'd*, 641 N.W.2d 900 (Minn. 2002). But no Minnesota precedent supports appellant's contention that predatory-offender registration is a direct consequence, or that failure to tell a client of a predatory-offender registration requirement qualifies as ineffective assistance of counsel. Even if appellant could show he fulfilled the second prong of the *Strickland* test, he does not fulfill the first prong, and, because appellant must fulfill both prongs to show that his counsel was ineffective, this court need not consider if the result here would have been different. *See Rhodes*, 657 N.W.2d at 842 (stating that, if a defendant does not fulfill one prong of the *Strickland* test, the other prong need not be considered). Thus, we conclude that appellant's counsel was not ineffective, his guilty plea was valid, and he has no right to withdraw his guilty plea because there was no manifest injustice.

**Affirmed.**

---

ruling on the interpretation of the . . . civil commitment statute. Rather, his deficient performance was his affirmative misadvice").